[Crim. No. 20257. July 31, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
GEROLD JOSEPH PETERS, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Michael Rotsten and Quin Denvir, State Public Defender, Clifton R. Jeffers, Chief Assistant State Public Defender, Michael G. Millman and Robert P. Mason, Deputy State Public Defenders, for Defendant and Respondent.

**OPINION**

**NEWMAN, J.—** ■ The People appeal from the trial court's dismissal of an indictment dated May 5, 1976, charging that defendant committed a felony. Defendant argues that the dismissal was justified because, at a first preliminary examination on October 14 and a second on December 16, 1975, the magistrates had dismissed prosecutions of him for the same offense. Penal Code section 1387 states that ". . . dismissal of an action pursuant to this chapter is a bar to any other prosecution for the same

offense if it is a felony and the action has been previously dismissed pursuant to this chapter. . . ."

In that statute, "this chapter" means chapter 8 of title 10 of part 2 of the Penal Code ("Dismissal of the Action for Want of Prosecution or Otherwise"). In chapter 8 the only words that could have authorized the magistrates' dismissals in this case ("pursuant to this chapter") are these in section 1385: "*The court may . . . in furtherance of justice, order an action to be dismissed.*" The issue here is whether, within the meaning of those 13 words, each magistrate was a "court" when, during the preliminary examinations on October 14 and December 16, 1975, the decision was made to dismiss the action against defendant.

There are no constitutional issues. The issues of policy are of course for the Legislature, which only two years ago extended the bar of section 1387 to felonies as well as misdemeanors.[1] *Our sole concern now is the exact meaning of "court."* If in section 1385 it denotes a tribunal that may conduct a trial, contrasted with a tribunal that merely decides whether defendant should be held for trial, then the indictment here should not have been dismissed because the authority conferred by section 1385 extends only to a court. We seek, therefore, guides regarding the Legislature's intent when it used the word "court."

People and press do refer to "the magistrate's court." They even say, "In court this morning the magistrate decided to hold the suspect for trial." (Cf. Pen. Code, § 1538.5, subd. (f). But see *People* v. *Brite* (1937) 9 Cal.2d 666, 683 [72 P.2d 122]; *Fursdon* v. *County of Los Angeles* (1950) 100 Cal.App.2d Supp. 845, 850 [223 P.2d 520].) Such loose usage does not, though, force us to a conclusion that the legislators who voted for section 1385 and its predecessor statutes believed that "court" should include magistrates as well as trial judges.

---

[1] The harassment of defendant in this case hardly seems commendable. The first magistrate dismissed when the prosecution refused to disclose an informant's name. Defendant's attorney agreed to the assignment to a second magistrate apparently because the prosecution threatened to file a third complaint if the first magistrate dismissed the second complaint. Then, because the second magistrate agreed with the first, the prosecution procured the grand jury indictment. (Cf. *People* v. *Uhlemann* (1973) 9 Cal.3d 662, 666 [108 Cal.Rptr. 657, 511 P.2d 609].)

One wonders why the Legislature thought it desirable to restrict section 1387's bar to dismissals that are "pursuant to this chapter." (Cf. Pen. Code, §§ 871 and 995, which prescribe other forms of dismissal but are not in the chapter; also see § 999.)

The predecessor statutes date from 1850. There were revisions in 1851, 1872, and 1951.[2] The 1951 revision has special significance because it reflects legislative consideration of the comprehensive "Recommendations for Proposed Changes in Criminal Procedure in Inferior and Superior Courts of the State of California" that were submitted by Judge Hartley Shaw, Presiding Judge of the Los Angeles Superior Court's Appellate Department. (See Final Rep. of the Special Crime Study Com. on Criminal Law and Procedure, *supra,* pp. 39-85.) In his report Judge Shaw's use of "court" and "magistrate" were as follows (*id.,* p. 43, italics added):

"1. The words 'inferior court' or 'inferior courts' include municipal courts, justices' courts, city courts, police courts, police judges' courts, and all courts other than superior courts, *having jurisdiction to try misdemeanor charges.*

"2. The words 'competent court' when used with reference to the jurisdiction over any public offense, mean any court the subject matter jurisdiction of which includes the offense so mentioned.

"3. The words 'jurisdictional territory' when used with reference to a court, mean the city and county, county, city, township or other limited territory over which the criminal jurisdiction of such court extends, as provided by law, and in case of a superior court mean the county in which such court sits.

"4. The words 'accusatory pleading' include an indictment, an information, an accusation, a complaint filed with a magistrate charging *a public offense of which the superior court has original trial jurisdiction,* and

---

[2]The 1850 statute (ch. 119, § 629) authorized the "Court" to dismiss "any action after indictment." At that time all felonies and some misdemeanors were prosecuted via a hearing followed by indictment. (Stats. 1850, ch. 119, §§ 7, 147-169, 647; ch. 86, § 5.) Since dismissals were to be after indictment the expressed power to dismiss rested with trial courts only.

In 1851 section 629 was repealed, and a new enactment empowered the "Court" to dismiss any "action or indictment." (Stats. 1851, ch. 29, § 597.) It seems likely that the change was to allow dismissal of misdemeanors not the subject of an indictment. The People suggest here that, since section 597 used "Court" while other 1851 statutes (ch. 29, §§ 29, 507, 508, 518, 519, 684) used "Court or Magistrate," the change was not intended to grant magistrates any power to dismiss.

The 1951 revision pertinent to our case is the deletion of "or indictment" from the phrase "action or indictment." In the legislative history the explanation appears as follows: " 'Or indictment' [was] omitted as unnecessary. If the action is gone, so are the pleadings." (Final Rep. of the Special Crime Study Com. on Criminal Law and Procedure (1949) pp. 79-80.)

a complaint filed with an inferior court charging *a public offense of which such inferior court has original trial jurisdiction. . . .*"

To be stressed are (1) those last six words in paragraph 1, (2) their impact on the distinctions between "court" and "magistrate" that inhere in paragraph 4. It seems indisputable that Judge Shaw's analyses of existing statutes and his proposed revisions led him to conclude first, that "courts" are tribunals that have trial jurisdiction; second, that a magistrate is not an inferior court, a superior court, or a competent court. Instead, from 1850 onwards the Legislature had treated a magistrate as an official who merely decides whether a suspect should be held for trial. She or he is not a "court" because at the preliminary hearing stage there is no "trial jurisdiction." Arguments here have not persuaded us that Judge Shaw's analyses were incorrect then or are outdated now.

We conclude, therefore, that Penal Code section 1385 authorizes dismissals by trial courts, not magistrates. The contrary conclusion in *Horner* v. *Superior Court* (1976) 64 Cal.App.3d 638 [134 Cal.Rptr. 607] is disapproved.

The order of dismissal is reversed.

Richardson, J., and Manuel, J., concurred.

Clark, J., concurred in the judgment and opinion of the court, excepting footnote 1.

**MOSK, J.**—I dissent.

The facts of this case constitute a vivid example of prosecutorial harassment and forum-shopping.[1] On October 14, 1975, defendant appeared at a preliminary examination before a municipal court magistrate on charges of possession of marijuana and possession of a controlled substance for sale. (Health & Saf. Code, §§ 11357, 11378, subd. (a).). On the People's refusal to disclose the identity of an informant deemed to be an essential witness, the magistrate dismissed the case in furtherance of justice pursuant to Penal Code section 1385.[2]

The People then refiled the same charges against defendant. When the second preliminary examination was set before the magistrate who had

---

[1]The People conceded at oral argument that harassment is "an aspect of this case," and the majority agree (fn. 1, *ante*).

[2]All further statutory references herein are to the Penal Code.

previously dismissed the action, the People threatened a third filing if the case was again dismissed. Capitulating to that threat, defendant stipulated to the examination being set before a different magistrate.[3] When the People continued to withhold the informant's identity, the second magistrate dismissed the action on December 16, 1975, again pursuant to section 1385.[4]

Not satisfied with the considered decisions of two municipal court judges sitting as magistrates,[5] on May 5, 1976, the People turned to yet another forum and presented the case to the grand jury for an indictment. Predictably, without revelation of the informant, the People obtained an indictment on the same day. The superior court thereafter granted defendant's motion to dismiss pursuant to section 1387, and the People appeal from that order.

I

The majority opinion identifies the construction of the word "court" in the context of section 1385 as the issue requiring resolution, and then proceeds to assign an overly formalistic meaning to the term contrary to common usage, legislative intent, and previous judicial interpretation. The majority rely solely on certain legislative recommendations formulated in 1949 by Judge Hartley Shaw to conclude that "court" means only tribunals with trial jurisdiction, thereby excluding magistrates from the power to dismiss pursuant to section 1385.

The conclusion gleaned from the Shaw commentary is questionable on several grounds. First, Shaw provides no express definition of "court," an omission which renders his report of circumstantial relevance at best. Second, the majority offer no explanation why the meaning of "court" should be controlled by an assumed interrelationship between the definitions of "inferior court" and "accusatory pleading." Third, the power of the magistrate is by definition inseparable from the court of which he is a member. That is, only the *tribunal* need have trial jurisdiction; it is not rational to focus on the person of the magistrate,

---

[3] This stipulation constitutes in effect another dismissal of the action.

[4] The second formal dismissal came after the magistrate granted a continuance of the examination following the People's threat to refile a third time if not given further opportunity to prepare.

[5] Indeed, the People were apparently unwilling to accept as final the decision of any magistrate in this case. The second magistrate reported that a deputy district attorney told him, "If we don't like what you say, we will just refile [the complaint]."

because no judge possesses trial jurisdiction apart from his relationship with the court on which he sits. Here the magistrate was a judge of the municipal court, and hence comes within Shaw's definition of "inferior court" because the municipal court is obviously a body with trial jurisdiction. Finally, even if the Shaw construction were to support the majority's conclusion as a matter of logic, there is no indication that the Legislature intended to adopt this hypertechnical interpretation of the word "court." Quite to the contrary, related statutes as well as judicial construction reflect general acceptance of a common meaning of "court" to include magistrates.

To begin with, the statutory history of section 1385—the sole basis of the majority opinion—presents an equivocal picture at best. The predecessor statute to section 1385, section 629 of chapter 119, Statutes of 1850, authorized dismissal in the interest of justice "after indictment." Because chapter 119 provided for indictment only after preliminary hearing, section 629 would appear to have precluded dismissal by a magistrate. However, the limitation implicit in section 629 was subsequently modified by changes in 1851 (Stats. 1851, ch. 29, § 597, p. 279) which permitted dismissal of an "action or indictment," and it was eliminated altogether by the 1951 amendment to section 1385 deleting any reference to indictment. This sequence of amendments implies an intent to extend section 1385 dismissal power to all stages of a proceeding, including arraignment or examination before a magistrate.

If the statutory history thus does not provide a definitive interpretation of the word "court," use of that term in related Penal Code provisions leaves little doubt that magistrates possess dismissal authority pursuant to section 1385. First, section 1387 declares an exception to the bar against further prosecution when "subsequent to the dismissal of the felony the court finds that substantial new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at or prior to the time of dismissal." These are factual issues peculiarly within the competence of a magistrate. To hold that only trial courts can apply this exception to section 1387 would be to sanction both a waste of judicial resources and an unnecessary restraint on defendants' liberty pending a superior court ruling on the point. Second, section 1388, a provision in the same chapter as the sections at issue herein (ch. 8, tit. 10, pt. 2), uses the term "court" in a context clearly intended to refer to magistrates: "the court shall issue" an arrest warrant for failure of a defendant to appear for arraignment on charges that have been refiled. Another chapter 8 provision, section 1383, which allows "the Court" to

order a continuance, likewise appears applicable to proceedings before a magistrate.

Additionally, the statutes which enumerate the specific functions of magistrates repeatedly use the terms "court" and "magistrate" interchangeably. Thus section 859, which provides for the taking of arrested persons before a magistrate, requires "the court" to inform the defendant regarding the right to counsel, and directs "the court" to assign counsel if the defendant is unable to employ an attorney. The section further requires the prosecution to make various reports available to the defendant "upon the first court appearance of counsel," which obviously does not relate to the first *trial* court appearance of the defendant's attorney. Moreover, section 859a, which deals with the entering of pleas before a magistrate, states in part: "If the defendant subsequently files a written motion to withdraw the plea under section 1018, the motion shall be heard and determined by *the court* before which the plea was entered." (Italics added.) Section 868, relating to exclusion of the public from preliminary examinations before magistrates, entitles a prosecuting witness, "in the discretion of the court," to the attendance of one person for moral support. Finally, sections 1002 and following, which deal with demurrers, repeatedly use the term "court" in contexts that strongly imply inclusion of proceedings before magistrates.

This summary review of Penal Code provisions relating to magistrates' functions compels the conclusion that the Legislature intended to—and did—include magistrates within the scope of the term "court." To disregard this conclusion by erecting an artificial distinction confined to the circumstances of dismissals under section 1385 would ignore manifest legislative intent and countenance conflicting interpretations of essentially identical statutory terminology.

## II

Judicial precedent likewise refutes any purported distinction between the terms "court" and "magistrate." Several cases relating to dismissals under section 1385 refer to magistrates as "courts" or "trial courts." (*People v. Orin* (1975) 13 Cal.3d 937, 950, fn. 13 [120 Cal.Rptr. 65, 533 P.2d 193]; *People v. Dorsey* (1972) 28 Cal.App.3d 15, 17 [104 Cal.Rptr. 326]; *People v. Superior Court (Mowry)* (1971) 20 Cal.App.3d 684, 687 [97 Cal.Rptr. 886]; *People v. Curtiss* (1970) 4 Cal.App.3d 123, 125 [84 Cal.Rptr. 106].) Moreover, Court of Appeal decisions have implicitly sustained the exercise of dismissal power by magistrates in the interests of

justice. Thus *People* v. *Superior Court (Mowry) supra,* 20 Cal.App.3d 684, permitted a section 1385 dismissal at arraignment where defendant, having recently been sentenced on a related offense, would have received no more than a concurrent sentence on the new charges, rendering a second trial meaningless. (See also *People* v. *Dorsey, supra,* 28 Cal.App.3d 15, 17-18.) Similarly, *Arnold* v. *Williams* (1963) 222 Cal.App.2d 193 [35 Cal.Rptr. 35], sanctioned a dismissal pursuant to section 1385 by a magistrate when the prosecution was not prepared to proceed at a preliminary examination. *People* v. *Curtiss, supra,* 4 Cal.App.3d 123, found an abuse of discretion in the dismissal of an action at arraignment under the authority of section 1385; however, the court did not question magistrates' power to dismiss in furtherance of justice. And *Horner* v. *Superior Court* (1976) 64 Cal.App.3d 638, 643 [134 Cal.Rptr. 607], expressly rejected the prosecutor's contention that only trial court jurisdiction is sufficient to support exercise of section 1385 dismissal power. *Horner* presents a procedural record closely similar to that of defendant herein: the People sought to refile charges which had previously been twice dismissed, once in a justice court and once in superior court, and the third prosecution was held barred by section 1387.

Furthermore, this court has repeatedly acquiesced in the position taken by the Courts of Appeal. In *People* v. *Orin, supra,* 13 Cal.3d 937, we concluded that a trial court does not have uncontrolled discretion to employ section 1385 as a plea bargaining tool; the interests of justice must be served by the dismissal of charges when the prosecutor objects to the arrangement. However, we impliedly recognized the propriety of magistrate dismissal under section 1385 by citing with approval (at pp. 944, 946) the *Curtiss, Mowry,* and *Arnold* decisions. Nor did we question the power of a magistrate to dismiss pursuant to section 1385 when, in *People* v. *Uhlemann* (1973) 9 Cal.3d 662 [108 Cal.Rptr. 657, 511 P.2d 609], we held that such a dismissal did not preclude a second filing of charges by a prosecutor. We implicitly substantiated magistrates' section 1385 power by our citations (at p. 666) to *People* v. *MacCagnan* (1954) 129 Cal.App.2d 100 [276 P.2d 679] (pretrial dismissal under section 1385 because of pending indictment charging same offense), and *People* v. *Godlewski* (1943) 22 Cal.2d 677 [140 P.2d 381] (confirming the power of justice courts to dismiss pursuant to section 1381, which falls within the same chapter as section 1385 and uses the term "court" in a similar fashion).

While judicial semantics may not be conclusive regarding legislative intent, we must presume that the Legislature has intentionally acquiesced

in the construction of the word "court" documented above by virtue of its failure to expressly exclude magistrates from section 1385 in the course of the amendments to chapter 8 enacted in 1971, 1973, 1975, and 1976.

Such commentators as have addressed the issue appear to be in accord. One writer, reviewing our decision in *Orin,* recognized the propriety of applying section 1385 in *People* v. *Superior Court (Mowry) supra,* 20 Cal.App.3d 684, by a magistrate to preclude harassment. (Note, *The Supreme Court of California 1974-1975* (1976) 64 Cal.L.Rev. 229 286, 504.) Furthermore, section 1385 dismissal is considered to be within a court's discretion "at *any* time while the action is pending." (Italics added.) (Cal. Criminal Law Practice (Cont.Ed.Bar 1964) Arraignment, Pleadings, Motions, § 8.119, p. 349.)

The People contend that a magistrate never has the authority to "dismiss" an action; rather, it is argued, magistrates may only "discharge" defendants pursuant to section 871. This contention lacks credibility for several reasons. First, the People concede that an "inherent power" of magistrates to dismiss may exist as suggested in *Bates* v. *Superior Court* (1951) 107 Cal.App.2d 656, 658 [237 P.2d 544]. Without deciding the existence of such authority, it is sufficient to note the basic conflict in the People's position: to concede the existence of an "inherent power" without any statutory foundation and yet deny the magistrate a power to dismiss in furtherance of justice as provided by the Legislature is a patent anomaly.

Second, the People do not suggest how a magistrate can avoid dismissal in the circumstance of a multicharge complaint when insufficient cause exists to hold the defendant on count I but probable cause does exist as to count II: the magistrate certainly cannot merely "discharge" the defendant if he is to be held to answer on the second count.

I also note that judicial precedent is replete with references to magistrates' power to "dismiss." (See, e.g., *People* v. *Godlewski, supra,* 22 Cal.2d 677, 679; *People* v. *Uhlemann, supra,* 9 Cal.3d 662, 664; *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 151 [114 P.2d 335, 135 A.L.R. 775].)

### III

Sound policy considerations support this rather than the majority's conclusion. The predominant purpose of section 1387 is to establish some limit to a defendant's period of potential criminal liability, thereby

avoiding harassment and discouraging prosecutorial forum-shopping. (Note, *Review of Selected 1975 California Legislation* (1976) 7 Pacific L.J. 237, 382-384.) As one commentary has explained, "The prosecutor's absolute power to refile should be substantially limited. He should be barred from refiling (or going the alternate grand jury route) where he has no better justification than the hope that a second magistrate will look more kindly on the same evidence, or that, somehow, better evidence can be mustered the second time around. To permit relitigation for these reasons is to reward casual preparation, to create uncertainty, to permit harassment, and to waste judicial resources." (Fn. omitted.) (Graham & Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations* (1971) 18 UCLA L.Rev. 635, 730-731.) We have previously pointed out the need to protect defendants from the harassment inherent in unlimited prosecutorial authority to refile. (*People v. Uhlemann, supra,* 9 Cal.3d 662, 669; see also *id.,* at p. 676 (dis. opn. by Mosk, J.).) This defendant, too, is entitled to protection from prosecutorial harassment and forum-shopping.

Furthermore, to conclude that section 1385 is not available to magistrates would raise serious questions regarding the substantive value of the constitutional right to a speedy trial. (Cal. Const., art. I, § 15; U.S. Const., 6th Amend.) In *Jones v. Superior Court* (1970) 3 Cal.3d 734, 738 [91 Cal.Rptr. 578, 478 P.2d 10], we noted the panoply of legislative provisions enacted to implement constitutional speedy trial protection. (See, e.g., Pen. Code, §§ 686, 1050, 1381, 1381.5, and 1382.) However, we have also recognized that the right to a speedy trial is self-executing; a criminal defendant need not rely on a specific statutory ground to claim prosecutorial abuse. (*Jones v. Superior Court, supra,* 3 Cal.3d at pp. 738-739; *Sykes v. Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90].)[6] Particularly relevant here is our comment in *People v. Hannon* (1977) 19 Cal.3d 588, 609 [138 Cal.Rptr. 885, 564 P.2d 1203], that "The constitutional right to a speedy trial may be violated by prejudicial delay resulting from intentional efforts to harass or oppress a defendant or simply the neglect of the state or its officers." Denial of the protection offered by section 1387 is thus repugnant to the spirit of constitutional and statutory speedy trial protection.

In addition, the narrow construction advocated by the majority causes serious procedural problems and would have the effect of needlessly

[6]Defendant does not claim violation of any statutory speedy trial requirement. *People v. Godlewski, supra,* 22 Cal.2d 677, 682-683, suggests that multiple refiling may never invoke statutory speedy trial protection.

increasing judicial burdens. It would presumably require adoption of a similar interpretation of "court" throughout chapter 8. The result of such a construction would be to preclude magistrate dismissal pursuant not only to section 1385 but also to sections 1381 and 1381.5 (failure to comply with prerequisites to prosecution of imprisoned defendants). Efficient administration of justice requires that these grounds for dismissal remain available to defendants during proceedings before magistrates; to defer such dismissals until appearance before the superior court would produce an unjustifiable addition to the judicial workload with concomitant infringements on defendants' liberty.

Finally, because the Legislature has previously entrusted magistrates with the power to determine what constitutes "the interest of justice" in one context (§ 858.5), there is no reason to exclude them from such a determination under section 1385. We have previously recognized the performance of judicial functions by magistrates. (*Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 126-127 [95 Cal.Rptr. 524, 485 P.2d 1140].) We have also established substantial guidance for the exercise of the judicial function of determining what constitutes "in furtherance of justice" within the contemplation of section 1385. (*People* v. *Orin, supra,* 13 Cal.3d 937, 945-946; *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 505 [72 Cal.Rptr. 330, 446 P.2d 138].) Accordingly, application of section 1385 is a function for which magistrates are not unprepared.

I therefore conclude, in light of legislative intent, judicial precedent, and public policy considerations, that magistrates are empowered to dismiss pursuant to section 1385.

## IV

The People also contend that principles controlling the retroactive application of statutes bar any relief to defendant herein. I am not persuaded that any retroactivity issue is presented by this case; while the first two dismissals did occur prior to the effective date of the amended version of section 1387 (Jan. 1, 1976), the third prosecution of defendant in the form of an indictment did not occur until more than five months after that date. In the absence of legislative direction on the issue I conclude that, inasmuch as section 1387 redresses the abuse inherent in a *third* prosecution, it is the occurrence of the latter event which should control.

Moreover, settled principles of retroactivity likewise lead to the conclusion that section 1387 should operate here. We stated in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], "when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of *factors that may give a clue to the legislative intent.*" (Italics added; *id.,* at p. 746.)

In the present case, application of section 1387 to defendant furthers the purpose of that statute to prevent prosecutorial forum-shopping and harassment of persons charged with crime. Furthermore, because both dismissals came subsequent to legislative vote, gubernatorial approval, and filing of the 1976 amendment to section 1387 with the Secretary of State, the People cannot claim detrimental reliance on the prior state of the law. The prosecutor had ample opportunity to seek grand jury indictment before the effective date of the amendment. Finally, little adverse effect on the administration of justice seems likely: the case presents the seemingly rare posture of two dismissals under section 1385 preceding the effective date of the amendment to section 1387 but the third prosecution coming well after that date. In the circumstances, application of the amendment in the case at bar will not violate legislative intent.

I would affirm the order of dismissal.

Bird, C. J., and Tobriner, J., concurred.

**BIRD, C. J.,** Dissenting.—Justice Mosk is correct in his critique of the majority's position for it not only conflicts with the plain meaning of the word "court" throughout the Penal Code, it conflicts with legislative intent. In 1975, the Legislature enacted Senate Bill No. 487, adding to Penal Code section 1387 the language which bars the multiple refiling of felony prosecutions. (Stats. 1975, ch. 1069, § 1, p. 2615.) The bill digests prepared in connection with Senate Bill No. 487 in both the Assembly Committee on Criminal Justice and the Senate Committee on the Judiciary state that the purpose of the 1975 amendment was to "prevent abuses in the dismissal and reinstatement of felony prosecutions . . . ." (Bill digest, Sen. Bill No. 487, Assem. Com. on Criminal Justice,

1975-1976 Reg. Sess.; bill digest, Sen. Bill No. 487, Sen. Com. on Judiciary, 1975-1976 Reg. Sess.) Moreover, the letter of transmittal for Senate Bill No. 487 from the bill's author to the Governor (cf., *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 447, fn. 6 [143 Cal.Rptr. 139, 573 P.2d 41]) reemphasizes this purpose by pointing out that "the process of dismissing and refiling has been used in rare cases as a method of harassment. The District Attorneys' Association agrees that such harassment should not be permitted." (Letter of Sept. 12, 1975, from Senator Alfred H. Song to Governor Edmund G. Brown, Jr.)

The majority concede that the two dismissals and refilings constitute "harassment of defendant in this case." (Maj. opn., *ante,* fn. 1, at p. 751.) However, they go on to conclude that the Legislature did not intend to prevent this harassment. Nothing in the legislative history of Senate Bill No. 487 supports their conclusion. To rely on an ambiguous document written in connection with a *separate* Penal Code section over one quarter of a century prior to Senate Bill No. 487 is contrary to reason. Further, it leads to the highly questionable conclusion that a magistrate has *no* statutory power to dismiss any felony case, even upon motion of the prosecutor![1] For example, if a felony complaint is pending and the prosecutor determines that the accused is innocent, based on new evidence, the complaint may not be dismissed under the majority's holding. Surely, this was not the intent of the Legislature.

Ignored in the majority's discussion is the real issue, i.e., what did the Legislature intend when it enacted Senate Bill No. 487 in 1975? As Justice Mosk has so eloquently pointed out, if the legislative purpose of Penal Code section 1387 is considered, it is clear the result of the majority was never intended.

Respondent's petition for a rehearing was denied August 30, 1978. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[1] Penal Code section 1386 provides in relevant part that "neither the Attorney General nor the District Attorney can discontinue or abandon a prosecution for a public offense, except as provided in [Penal Code section 1385]."