[Crim. No. 11335. Third Dist. Mar. 31, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT NEVAREZ et al., Defendants and Respondents.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Appellant.

Fass, McIlwrath & Yecies, Rolleen McIlwrath, Van Dyke, Shaw & Schuckman and William A. Schuckman for Defendants and Respondents.

OPINION

REYNOSO, J.*—Prior to January 1, 1981, an order to set aside an indictment or information pursuant to Penal Code section 995 was not a bar to future prosecution for the same offense. (Pen. Code, § 999.) Effective January 1, 1981, the Legislature amended Penal Code section 1387 to provide that an order terminating an action under certain specified Penal Code sections, including section 995, is a bar to future prosecution for the same offense if it is a felony or a misdemeanor charged with a felony and the action has previously been dismissed under one of the specified code sections. The bar applies unless the prosecution has discovered substantial new evidence which would not have been known through the exercise of due diligence prior to the time of the termination of the action.

Defendants Robert Nevarez and Thomas Acosta were charged with the crime of murder (Pen. Code, § 187), by information filed on December 1, 1980. After the effective date of the amendment to Penal Code section 1387, defendants moved to dismiss pursuant to that section, asserting that a prior dismissal of the charges under Penal Code section 995 operated as a bar to further prosecution. The trial court agreed and dismissed the actions against each defendant. The People appeal contending that the amendment to Penal Code section 1387 can-

---

*Assigned by the Chairperson of the Judicial Council.

not apply to dismissal prior to its effective date. For reasons we will explain we agree and reverse the orders of dismissal.

I

This proceeding arises out of the 1975 murder of Deuel Vocational Institute (DVI) inmate Randy Roff. On June 8, 1975, Roff was stabbed to death in the main yard of DVI. Although bloody clothing and weapons were discovered in the yard, no physical evidence linking the defendants to the crime was found. A few days after the murder DVI inmate Robert Grigsby informed officials that he had witnessed the murder and that the defendants were responsible. The following day inmate Michael Watson informed officials that he too had witnessed the defendants kill Roff. Defendants were charged with the murder of Randy Roff and after a preliminary hearing each defendant was held to answer in superior court.

After the preliminary hearing, the District Attorney of San Joaquin County received information that both of the inmate witnesses were backing out of testifying against defendants. The witnesses were interviewed and each expressed concern for his personal safety. Later, inmates Wayne Townsley and Floyd Osborne told a defense attorney that they had witnessed the murder and that neither defendant was involved. Based upon this information the charges were dismissed against defendants on motion of the prosecutor for lack of evidence. Thereafter, all of the evidence in the possession of the San Joaquin County Sheriff's office was destroyed, since it was believed that no future prosecution was possible.

The murder of Randy Roff was believed to be connected with a criminal conspiracy operating in California prisons known as the Nuestra Familia. In 1978 inroads had been made in the prosecution of Nuestra Familia members and, in the words of the prosecutor, the organization was beginning to break apart. A former Nuestra Familia member named Cecil Musser informed officials that the Roff murder had been ordered by Nuestra Familia leaders. He stated that he had personally witnessed the Roff murder and that the defendants were responsible. He also stated that each defendant had later admitted to him that they were the killers.

Former Nuestra Familia member Ray Contreras informed officials that although he had no direct knowledge of the Roff murder, each de-

fendant had informed him that they were the killers. He also stated that he believed a high-ranking leader of the Nuestra Familia named Art Beltran had worked with the defendants to develop an alibi. Art Beltran was interviewed and after a plea bargain was arranged in which he was allowed to plead guilty to three counts of second degree murder, Beltran agreed to testify for the prosecution. He indicated that he had been involved in the planning of the Roff murder, that he witnessed the defendants commit the murder, and that he set up an alibi for them which included contacting inmates Osborne and Townsley. Another former Nuestra Familia member, Joe Cobos, told authorities that defendant Nevarez had told him that the prosecutor was attempting to refile an old charge of murder on him which he and Acosta had gotten away with. Additional evidence was gathered after the murder charges were refiled.

In 1979 defendants were charged by information with the murder of Randy Roff. Defendants moved to dismiss the information pursuant to Penal Code section 995. The bases for the motions were untimely prosecution and the destruction of the evidence. The superior court rejected the contention that defendants were denied a speedy trial, but accepted the argument that the People improperly destroyed the evidence. The court ruled that the testimony at the preliminary hearing of Robert Grigsby should be stricken, pursuant to *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]. The court then granted the motion to dismiss under Penal Code section 995.

The prosecutor sought to have the court consider the sufficiency of the preliminary hearing evidence without the testimony of Grigsby, arguing that there was sufficient evidence without that testimony. The court denied the request, stating: "Well, okay, okay. I'm going to deny the request to continue it. I think that the—that type of determination as to whether the other evidence is sufficient, itself, should really be determined by the magistrate. And pulling a very important witness out of the prelim is going to cause me, even though it may be long and laborious, to stand by the same ruling of granting the 995 at this point. The matter can be refiled and reopened." The court further stated: "Yeah, but the question is whether the magistrate who heard all the evidence, in light of the defense evidence, would hold him, based on this one piece of evidence without the other in there. Where you have a shaky eyewitness and a co-conspirator, that's a stronger combination, quite a bit, than by Ray Contreras, himself. I'm not saying if he was held to answer on Ray Contreras alone, that I wouldn't say that's okay."

The proceedings were commenced anew by complaint filed the day after the dismissal of the action. After a lengthy preliminary hearing defendants were again held to answer. An information was filed on December 1, 1980, charging defendants with the murder of Randy Roff. One month after the information was filed the amendment to Penal Code section 1387 became effective. The amendment provided that a dismissal pursuant to Penal Code section 995 operates as a bar to further prosecution if the proceedings have been previously terminated pursuant to certain specified Penal Code sections, and no substantial new evidence has been discovered. Defendants moved for dismissal under Penal Code section 1387, as amended, arguing that the action had been twice previously dismissed and therefore further prosecution was barred. The trial court agreed and ordered the action dismissed. The People appeal.

## II

At the time the superior court dismissed the charges against the defendants pursuant to Penal Code section 995, Penal Code section 1387 provided: "An order for the dismissal of an action pursuant to this chapter is a bar to any other prosecution for the same offense if it is a felony and the action has been previously dismissed pursuant to this chapter, or if it is a misdemeanor; except in those felony cases ... where subsequent to the dismissal of the felony the court finds that substantial new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at or prior to the time of dismissal." The dismissals to which that section applied are those pursuant to chapter 8 of the Penal Code which includes sections 1381 through 1388, but does not include section 995. Section 1387 therefore did not provide that a dismissal under section 995 was a bar to further prosecution regardless of the number of prior dismissals. (See *People* v. *Peters* (1978) 21 Cal.3d 749, 751, fn. 1 [147 Cal.Rptr. 646, 581 P.2d 651], overruled on another point in *Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].)

The Legislature amended Penal Code section 1387 in Statutes of 1980, chapter 938, section 8. The amended version of the statute, which became effective January 1, 1981 (see Const. of Cal., art. IV, § 8, subd. (c)(1)), provides: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or it is a misdemeanor charged together with a felony and the action has been previously ter-

minated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony, except in those felony cases, or those cases where a misdemeanor is charged with a felony, where subsequent to the dismissal of the felony or misdemeanor the judge or magistrate finds that substantial new evidence has been discovered by the prosecution which would not have been known through the exercise of due diligence at or prior to the time of termination of the action."

The 1980 amendment to Penal Code section 1387 was a legislative reaction to the Supreme Court decision in *People* v. *Peters, supra,* 21 Cal.3d 749, which has recently been overruled by the Supreme Court in *Landrum* v. *Superior Court, supra,* 30 Cal.3d 1. In *Peters* the court held that a magistrate is not a "court" within the meaning of Penal Code section 1385 which provides that a court may dismiss an action in the interest of justice; and that a purported dismissal by a magistrate therefore does not bar further prosecution by virtue of section 1387. In a footnote the court questioned the Legislature's decision to restrict the bar to further prosecution to dismissals under chapter 8 of the Penal Code and not to dismissals under section 995. (*Peters,* 21 Cal.3d at p. 751, fn. 1.)

In chapter 938 of the Statutes of 1980, the Legislature amended the Penal Code to permit any judge or magistrate to dismiss an action in the interest of justice, and to permit the prosecutor to make a noticed motion to reinstate the complaint and the custodial status of the defendant where the complaint is believed to have been erroneously dismissed. The Legislature reacted to the Supreme Court's pondering footnote in *Peters* by amending section 1387 to provide that dismissals pursuant to sections 859b, 861, 871 and 995 as well as dismissals pursuant to chapter 8 of the Penal Code are a bar to further prosecution where the action has been previously dismissed pursuant to chapter 8 or one of the specified sections. Defendants argue that section 1387 as amended, operates to make a dismissal under section 995 a bar to further prosecution even though the dismissal occurred prior to the effective date of the amendment and at a time when such a dismissal did not operate as a bar to further prosecution.

In support of their argument that further prosecution is barred defendants cite *Horner* v. *Superior Court* (1976) 64 Cal.App.3d 638 [134 Cal.Rptr. 607], which was disapproved on another point in *People* v. *Peters, supra,* 21 Cal.3d at page 753, and subsequently reapproved in *Landrum* v. *Superior Court, supra,* 30 Cal.3d at pages 13-15. The deci-

sion in *Horner* involved a 1975 amendment to section 1387 which provided that a second dismissal under section 1385 is a bar to further prosecution. The People had moved for a second dismissal under section 1385 after the effective date of the amendment of section 1387, and then argued that further prosecution should not be barred, because the first dismissal had occurred before the effective date of the amendment. The Court of Appeal rejected that reasoning, stating: "Section 1387, as amended, was in effect in February 17, 1976, at the time the second dismissal order was made. The prosecuting attorney must have known at that time that he could no longer rely upon the old rule and that a second dismissal would trigger the bar of section 1387 so as to preclude him from refiling and pursuing a charge which had already been twice dismissed pursuant to section 1385. We cannot accept the People's argument that the first dismissal should not count because it occurred before the statute was amended." (64 Cal.App.3d at p. 643.)

The decision in *Horner* does not apply to the situation with which we deal. The pivotal consideration in that case was the fact that the second dismissal came *after* the effective date of the amendment of section 1387, at a time when the prosecutor must have known that a dismissal would bar further prosecution. The dismissal claimed to operate as a bar to further prosecution in this case came before the effective date of the amendment to section 1387, and at a time when such a dismissal did not operate as a bar to further prosecution. Moreover, it is clear from the record that all of the parties were acting under the assumption, accurate at the time, that dismissal would not bar further prosecution. The superior court judge expressly refused to consider whether there was sufficient evidence to hold defendants without the stricken testimony because a dismissal would not bar further prosecution. In view of the crucial distinctions between the situation here and that involved in *Horner*, the decision in that case is of no precedential value in resolving the issue in this case.

The problem of the application of amendments of procedural statutes to actions which arose before the effective date of the amendment has been considered in California appellate courts before. In *Rosefield Packing Co. v. Superior Court* (1935) a Cal.2d 120 [47 P.2d 716], the Supreme Court considered an amendment to Code of Civil Procedure section 583, which provided for mandatory dismissal of civil actions not brought to trial within five years of the filing of the action rather than five years from the filing of the answer as it had previously provided. The court noted that the Legislature may lengthen or shorten statutes

of limitation and similar procedural statutes, and may make such changes applicable to pending actions, but that if such a change operates immediately to cut off an existing remedy or within so short a time as to give the party no reasonable opportunity to exercise his remedy then application of the statute is unconstitutional as to him. (4 Cal.2d at p. 122. See also *Olivas v. Weiner* (1954) 127 Cal.App.2d 597, 600 [274 P.2d 476]; *Masonic Mines Assn. v. Superior Court* (1934) 136 Cal.App. 298, 300 [28 P.2d 691]; *Coleman v. Superior Court* (1933) 135 Cal.App. 74, 76-77 [26 P.2d 673].)

The effect of changes in criminal procedure upon pending actions has also been considered. In *Hawkins v. Superior Court* (1978) 22 Cal.3d 584, at page 594 [150 Cal.Rptr. 435, 586 P.2d 916], the Supreme Court held that equal protection of the law requires that an indicted defendant be accorded a postindictment preliminary hearing upon request, but due to the reliance of bench and bar upon the former procedure the change was made applicable only to Hawkins and to those indicated defendants who had not entered a plea prior to the finality of the opinion. In *People v. Cook* (1978) 22 Cal.3d 67, at page 99, footnote 18 [148 Cal.Rptr. 605, 583 P.2d 130], a judicial change in the law of search and seizure was held to apply only to searches conducted after the finality of the opinion due to official reliance upon former rules. (See also *People v. Ramey* (1976) 16 Cal.3d 263, 276, fn. 7 [127 Cal.Rptr. 629, 545 P.2d 1333]; *People v. Disbrow* (1976) 16 Cal.3d 101, 113, fn. 14 [127 Cal.Rptr. 360, 545 P.2d 272].)

The reluctance of the courts to apply procedural changes in the law to matters which occurred before their effective date is in accordance with a fundamental principle of justice. "One of the fundamental considerations of fairness recognized in every legal system is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated." (2 Sutherland Statutory Construction (4th ed. 1973) § 41.05, p. 261.) ■ The construction of the amendment of Penal Code section 1387 urged by defendants and accepted by the trial court defeats fundamental notions of fairness and disregards entirely the reliance of the bench and bar upon the former procedural rules. At the time the superior court granted defendants' motion for dismissal under Penal Code section 995 it made it abundantly clear that it was relying upon the People's right to refile those charges. The People, also in reliance upon that right, forwent an appeal and refiled the charges. The amendment to section 1387 was not enacted until six months after the dismissal and was not effective for more than nine

months after that time. Defendants now seek a windfall dismissal by the application of an effect of a dismissal under section 995 which that dismissal did not have at the time it was granted.

The real question we face is one of determining legislative intent. ■ In construing statutes an interpretation which is reasonable is preferred to one which is not or which would lead to mischief.. (*Stanley v. Justice Court* (1976) 55 Cal.App.3d 244, 253 [127 Cal.Rptr. 532]. See also *People* ex rel. Riles v. *Windsor University* (1977) 71 Cal. App.3d 326, 332 [139 Cal.Rptr. 378].) And statutes must be construed so as to harmonize with one another. (*People* v. *Trieber* (1946) 28 Cal.2d 657, 661 [171 P.2d 1].) ■ Penal Code section 995 must be construed together with section 1387. Prior to the effective date of the 1980 amendment of section 1387, a dismissal under section 995 was not a bar to further prosecution. By enacting the 1980 amendment to section 1387, the Legislature determined that a dismissal under section 995 should operate as a bar to further prosecution where the charges have previously been dismissed under certain specified code sections. In essence, the Legislature changed the nature and effect of a dismissal under section 995. Should that change apply to dismissals which occurred prior to the effective date of the amendment and at a time when such a dismissal did not have such an effect? We believe not. To so hold would not comport with fundamental principles of justice and would defeat the valid expectations of the bench and bar. We decline to infer such a legislative intent. Accordingly, we hold that a dismissal under section 995 operates as a bar to further prosecution only where the dismissal occurs after the effective date of the amendment of Penal Code section 1387 which gives it that effect. Since the dismissal which defendants assert as a bar to further prosecution occurred at a time when such a dismissal was not a bar to further prosecution, that dismissal does not operate as a bar to further prosecution.

The orders of dismissal are reversed as to each defendant.

Blease, Acting P. J., and Warren, J.,* concurred.

Petitions for a rehearing were denied April 29, 1982, and the petition of respondent Acosta for a hearing by the Supreme Court was denied May 27, 1982. Reynoso, J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.