[No. B010948. Second Dist., Div. Seven. Sept. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN JACK MAYO, Defendant and Appellant.

## Counsel

Maginnis & Maginnis and J. Patrick Maginnis for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**THOMPSON, J.**—Defendant Marvin Jack Mayo appeals from a judgment of conviction following a guilty plea to one count of possession with intent to manufacture phencyclidine (PCP). (Health & Saf. Code, § 11383, subd. (b); count IV.) Defendant contends that (1) Penal Code section 1387[1] bars reinstatement under section 871.5 of a twice dismissed complaint; (2) the superior court failed to find the dismissal to be error as a matter of law as required for reinstatement under section 871.5; and (3) certain evidence presented at the preliminary hearing should have been suppressed (§ 1538.5) and the information should have been dismissed (§§ 995, 1387). We conclude that section 1387 does not bar reinstatement, pursuant to section 871.5, of a twice dismissed complaint, and that the superior court properly found the dismissal to be erroneous as a matter of law and properly denied the motion to suppress evidence and dismiss the information. Affirmed.

I

### Factual and Procedural Background

In late December 1982, Officer Newsham, Supervisor of the Vice/Narcotics Division of the Burbank Police Department, received a tip from

---

[1]All section references are to the Penal Code unless otherwise indicated.

informant Wunderlin, a known drug user familiar with PCP, that defendant manufactured and sold PCP at defendant's residence, 6743 Atoll, North Hollywood. Wunderlin claimed that he could purchase PCP from defendant and that he had done so in the past. Wunderlin further stated that the chemicals were kept in a storage locker "somewhere."

Wunderlin engaged in a controlled buy of PCP on January 4, 1983, at defendant's residence. Newsham, Detective Hoover, and Officer Lynch accompanied Wunderlin to the residence and searched him before and after he entered to make the buy; Wunderlin was out of the officers' sight only during a short period while he was inside the residence. Wunderlin emerged from the residence with a substance identified as PCP.

Detective Hoover summarized the above observations in his affidavit for the January 7, 1983, search warrant; however, Hoover mistakenly stated that the above events occurred between "January 9 through January 11" when they actually occurred before and on January 4, 1983.

According to Newsham's preliminary hearing testimony of December 2, 1983, the following then occurred. On January 7, 1983, after obtaining the warrant, two teams of officers conducted a surveillance of defendant's house and business address, in order to determine the location of the storage locker and to serve the search warrant when defendant returned home. Newsham, who was observing defendant's house about 7 p.m., thought defendant was away because the house appeared dark and there were no signs of activity. While Newsham observed the house, a car pulled up and the passenger got out, knocked on the door, was admitted and then quickly exited the house. Realizing defendant was home, Newsham ran up to the house to serve the warrant, and in doing so, recognized the passenger who had gone in and out of the house to be Wunderlin, the informant. Newsham observed that Wunderlin was "very hyper and weird, and he had [a] very, very strong odor of P.C.P. about his person. . . . It was [Newsham's] opinion at that time that he was under the influence of P.C.P., and [Newsham] advised Sergeant Lowrey to detain him for that and to pat him down." A patdown search revealed a baggie that looked like the one that Wunderlin had brought out of the house after the controlled buy of January 7.

Newsham, believing that Wunderlin had just purchased PCP at the residence, went to the front door where he smelled a strong odor of PCP and ether. Defendant, the only person present in the home, answered the door; the warrant was served, and the officers searched the residence. Five plastic bags containing phenylcyclohexyl pyrolidine (PHP, an analog of PCP) were found in the garage adjacent to the house. Also on that evening, Wunderlin told Newsham that he had purchased PCP that evening from defendant.

Chemicals used in the manufacture of PCP were found in a consensual search of a storage locker that is not at issue on this appeal.

Defendant was arraigned on January 12, 1983, on three counts of violation of Health and Safety Code sections 11383, subdivision (b), 11378.5, and 11379.5. At the preliminary hearing on September 13, 1983, the magistrate granted defendant's motion to quash and traverse the search warrant. (§ 1538.5.) After the prosecutor stated that the People were unable to proceed, defendant's motion to dismiss was granted (§ 871.)

The People filed a second complaint, and a preliminary hearing was held on December 2, 1983. Defendant again successfully moved to quash and traverse the search warrant (§ 1538.5) due to the mistaken date in Hoover's affidavit, and the complaint was again dismissed after the Magistrate excluded the evidence (§ 871).

The People moved to reinstate the complaint pursuant to section 871.5, and the motion was granted on March 16, 1984. The case was returned to the municipal court for further proceedings, and defendant was held to answer on four counts: (I) sale or transportation of PCP (Health & Saf. Code, § 11379.5); (II) possession for sale of PCP (Health & Saf. Code, § 11378.5); (III) manufacture of PCP (Health & Saf. Code, § 11379.5); and (IV) possession with intent to manufacture PCP (Health & Saf. Code, § 11383, subd. (b)).

Defendant moved to quash and suppress the search warrant (§ 1538.5), and to set aside the information (§§ 995, 1387). After the motion was denied, defendant pled guilty to count IV, possession with intent to manufacture PCP (Health & Saf. Code, § 11383, subd. (b)), and the remaining counts were dismissed. Defendant was sentenced to three years probation with the first one hundred eighty days to be served in county jail (defendant received nine days of credit) and was fined $10,000. This appeal followed.

## II

SECTION 1387 DOES NOT BAR REINSTATEMENT PURSUANT TO SECTION 871.5 OF A TWICE DISMISSED COMPLAINT

As set forth above, the prosecution sought superior court review and reinstatement of the complaint after the second section 871 dismissal. Section 871.5 provides in pertinent part: "(a) When an action is dismissed by a magistrate pursuant to Section 859b, 861, 871, 1008, 1381, 1381.5, 1385, 1387, or 1389, . . . the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint . . . .

[on the ground] that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof."[2]

Defendant contends that the superior court erred in granting the section 871.5 motion because the complaint had been twice dismissed, and section 1387 bars the reinstatement of a twice dismissed complaint. The applicable 1983 version of section 1387 (section 1387) states in pertinent part: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony . . . ."[3] The stated exceptions to section 1387 are not applicable to this case.

Defendant primarily relies upon *Vlick* v. *Superior Court* (1982) 128 Cal.App.3d 992 [180 Cal.Rptr. 742], for the proposition that review may be sought under section 871.5 of only the first and not the second dismissal by a magistrate. We do not read *Vlick* so broadly. The court in *Vlick* "conclude[d] that dismissal of a complaint by a magistrate based upon a ruling on legal grounds on any motion properly before and decided by the magistrate is subject to review by the superior court on motion by the People on the ground that, 'as a matter of law, the magistrate erroneously dismissed the action,' and that this procedure is consistent with and in furtherance of the stated purpose of AB 2383 and the intent of the Legislature in enacting it." (*Id.*, at p. 999.) *Vlick* did not address the issue of whether only a first dismissal may be reviewed under section 871.5.

Our Supreme Court did, however, decide this issue against defendant in *Ramos* v. *Superior Court* (1982) 32 Cal.3d 26 [184 Cal.Rptr. 622, 648 P.2d 589]. In *Ramos,* the prosecutor filed an information under section 739 that recharged a special circumstance allegation that had been twice dismissed. The Supreme Court concluded that the "reinstatement of the special circumstance allegation pursuant to section 739 was an 'other prosecution for the same offense' which was barred under section 1387 because the allegation had already been dismissed twice under section 871." (*Id.*, at p. 36.) Pertinent to this appeal is the fact that *Ramos* noted that although the prosecutor was barred under section 1387 from refiling the twice dismissed special circumstance allegation, this "does not leave the People without means to challenge a second order of a magistrate dismissing all or a portion of a complaint. The 1980 legislation added a new Penal Code provision—section

---

[2]An order denying the prosecution's motion to reinstate the complaint pursuant to section 871.5 is an appealable order. (§ 1238, subd. (a)(9).) Section 871.5 provides that if the motion is "litigated to decision by the prosecutor, the prosecution is prohibited from refiling the dismissed action, or portion thereof." (§ 871.5, subd. (c).)

[3]Section 1387 has since been amended (Stats. 1984, ch. 924, § 1, pp. 93-94), but the above quoted portion of the statute was left unchanged.

871.5—which provides the People with a specially designed procedure for challenging a magistrate's dismissal order. In this case, however, the People did not avail themselves of the remedy afforded by section 871.5, but instead attempted simply to ignore the second dismissal by proceeding directly under section 739. [Fn. omitted.]" (*Ibid.*)

While this language in *Ramos* was not necessary to the decision and therefore dicta, nevertheless, as the issue had been carefully considered by our Supreme Court, it is entitled to great weight. (See *Aptos Seascape Corp. v. County of Santa Cruz* (1982) 138 Cal.App.3d 484, 493 [188 Cal.Rptr. 191]; *Jaramillo v. State of California* (1978) 81 Cal.App.3d 968, 971 [146 Cal.Rptr. 823].)

The intended purpose of section 871.5 would be frustrated by a contrary result. "Section 871.5 was added to the Penal Code, effective January 1, 1981, to provide for review by the superior court of dismissals of criminal actions by magistrates under certain circumstances specified in sections 859b, 861, 871, and 1385, as concurrently amended. These 1980 amendments were intended to overcome the holding of the Supreme Court in *People v. Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651], which construed the former language of those sections as authorizing 'courts' but not 'magistrates' to dismiss actions. Conferring upon magistrates the authority to dismiss required enactment of a statute authorizing the prosecution to seek immediate superior court review of such dismissals to have the complaint reinstated so that successive dismissals by magistrates will not bar refiling under concurrently amended Penal Code section 1387. [Fns. omitted.]" (*Chism v. Superior Court* (1981) 123 Cal.App.3d 1053, 1061 [176 Cal.Rptr. 909].)

We therefore follow the view expressed in *Ramos* that a second dismissal may be reviewed pursuant to section 871.5, notwithstanding section 1387. Obviously, had the People simply refiled the twice dismissed complaint and ignored section 871.5, as in *Ramos,* section 1387 would bar any further prosecution. (*Ramos v. Superior Court, supra,* 32 Cal.3d at p. 36.) Because section 871.5 was enacted to provide for review in this very situation, the superior court did not exceed its jurisdiction in entertaining the section 871.5 motion.

III

The Complaint Was Properly Reinstated Pursuant to Section 871.5

At the second preliminary hearing, the magistrate quashed the warrant due to the mistaken dates set forth in Hoover's affidavit. (§ 1538.5.) Then,

after hearing the testimony of various witnesses, including Newsham, Wunderlin, and defendant, the magistrate excluded the evidence, finding that "but for" the invalid search warrant, the officers "would not have been at the residence" on the evening of January 7, and concluding that the evidence would not have been inevitably discovered. Upon the prosecutor's representation that the People were unable to proceed any further, the complaint was dismissed for insufficient evidence. (§ 871.)

■ Upon review in the superior court (§ 871.5), the judge found that pursuant to *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780, 787-789 [95 Cal.Rptr. 213], the "error of the future date [in Hoover's affidavit] . . . should not preclude . . . probable cause for the issuance of a search warrant." We agree.

As in the instant case, the officer in *Tidwell* mistakenly set forth in his affidavit for the warrant of August 17, 1967, that he had seen the items to be seized during an investigation that took place on August 26, 1967, a future date. The investigation actually occurred on July 16, 1967. The defendant in *Tidwell* argued, as does defendant herein, that "since the date given for the incident had not yet arrived the affidavit could not convey to the magistrate probable cause for the search." (17 Cal.App.3d at p. 788.) The appellate court rejected this argument, stating: "Since the heart of the affidavit was that the officer had seen certain items during an investigation, and since the incorrect date was in no way relevant to establishing probable cause, the error does not preclude establishment of probable cause." (*Ibid.*)

■ Defendant attempts to distinguish *Tidwell*, arguing that there the officer personally observed the items to be seized, whereas Hoover only reiterated informant Wunderlin's hearsay statements. We are not persuaded. Hoover, along with Newsham and Lynch, searched Wunderlin before and after he entered the house and recovered the PCP that he brought out of the house. Therefore, as in *Tidwell*, Hoover's observations of the controlled buy and the PCP brought out of the house constituted the heart of the affidavit, and the incorrect date is irrelevant and fails to preclude the establishment of probable cause. (*Tidwell* v. *Superior Court, supra,* 17 Cal.App.3d at pp. 787-789.)

■ Moreover, as the prosecutor argued at the second preliminary hearing, the officers' good faith reliance on the facially valid search warrant should preclude the exclusion of the evidence in this situation. (See *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].) Although *Leon* had not been decided at the time of the preliminary hearing, we find it to be controlling for the following reasons. First, federal law applies to search and seizure issues after the enactment of California Con-

stitution article I, section 28, subdivision (d). And second, retroactive application of *Leon* is proper: ". . . . *Leon* is a decision which restricts the Fourth Amendment benefits afforded defendants. Numerous courts and commentators have recognized that in such situations, the new restrictive rule should be applied retroactively to all cases not final on appeal. [Citations.] This result derives from the underlying purpose of decisions such as *Leon* which restrict the scope of the exclusionary rule. The exclusionary rule is based on considerations collateral to the determination of guilt or innocence. [Citations.] The court has repeatedly recognized the inherent tension between the exclusionary rule and the goal that criminal defendants be 'acquitted or convicted on the basis of all the evidence which exposes the truth.' [Citations.] It has therefore adopted a balancing test for assessing whether the benefits of applying the exclusionary rule to deter unlawful police conduct outweigh the social costs associated with such application. [Citations.] Decisions like *Leon* represent a determination that in those situations, the benefits of applying the exclusionary rule—in terms of the deterrence of official misconduct—are not outweighed by the interference with the truth-finding function which the exclusion of relevant probative evidence would occasion. [Citation.] That policy determination having been made, there is no rational basis for applying the rule to exclude such relevant evidence in this case or any similar case not final on appeal. [Citation.] [Fns. omitted.]" (*People* v. *Helmquist* (1984) 161 Cal.App.3d 609, 615-616 [207 Cal.Rptr. 718].)

 According to *Leon,* suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." (*United States* v. *Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699].) "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." (*Id.,* at p. 926 [82 L.Ed.2d at pp. 700-701].) Applying this standard herein, we find that the officer's mistaken statement of the dates of the initial contact with the informant and of the controlled buy can at most be characterized as simple carelessness or negligence; it does not smack of a dishonest or reckless attempt to mislead a magistrate into finding probable cause where there is none. Further, we find that the officers' reliance on the magistrate's probable cause determination and on the technical sufficiency of the warrant was objectively reasonable given the circumstances under which the officers had personally observed the previous controlled buy.

We therefore conclude that the superior court's determination that the magistrate erred as a matter of law in dismissing the complaint is correct

under both *Tidwell* v. *Superior Court, supra,* 17 Cal.App.3d at pages 787-788, and *United States* v. *Leon, supra,* 468 U.S. at pages 922-926 [82 L.Ed.2d at pages 698-701].

## IV

### SECTIONS 1538.5, 995, AND 1387 MOTIONS WERE PROPERLY DENIED.

For the reasons set forth above, we conclude that the warrant should not have been quashed pursuant to section 1538.5, and thus the evidence was properly admitted. The testimony of the officers, the informant, and the PCP and chemicals found in the house and storage locker provided more than ample evidence to hold defendant to answer.

The judgment of conviction is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 25, 1986.