[Crim. No. 42577. Second Dist., Div. Two. Mar. 15, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
MANUEL LUNA, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Robert H. Philibosian, District Attorneys, Donald J. Kaplan and Arnold T. Guminski, Deputy District Attorneys, for Plaintiff and Appellant.

Nancy B. Sperber, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

GATES, J.- The People appeal from a trial court's order dismissing a felony action based upon its interpretation of Penal Code section 871.5. They

contend: "The superior court erred in holding that the People are precluded from refiling after the magistrate's dismissal of a felony complaint absent a showing of new or additional evidence, and in holding that the People's sole recourse is resort to the new procedure of review pursuant to Penal Code section 871.5."

Defendant Manuel Luna was charged with possessing phencyclidine (PCP) on February 19, 1981. At his first preliminary hearing, Los Angeles Police Officer Richard Yukihiro testified that after defendant had been stopped for a traffic violation,[1] he had spontaneously exited his vehicle. The officer averred that as defendant did so, his pant leg rose slightly exposing the stocking on the left side of his left leg. The officer was there able to detect the presence of a small white bottle of the type typically used to transport PCP. As the defendant and the officer walked towards one another the officer could detect the unique and pungent aroma of ether associated with PCP while they were yet five feet apart. When they came together the officer also noted that defendant's eyes were nystagmic. Because of defendant's condition, and the nature of the locale where the incident occurred, the officer patted defendant down for offensive weapons before removing the contraband-filled bottle from his stocking. Unfortunately, the officer was not asked by either party if he had actually viewed the condition of the flesh on defendant's left leg.

In response defendant asserted that (1) he had not exited his vehicle until directed to do so, (2) he always wore knee length stockings, (3) he had a large scar on his left leg, and (4) he had taken no drugs that day and did not even know what PCP was.[2]

The magistrate conducting this examination thereupon concluded it with the following statement:

"I believe that the officer's testimony lacks credibility. He says he is going to warn this man about a parking violation that is already being resolved. The man had moved and legally parked. Then he allegedly, from his position, sees the person get out of a car with the *left side of the left leg* visible, where he saw this bottle. It is obvious to me, if he is getting out of the car, *the right side of his leg* is going to be visible to the officer.

[1]Defendant had illegally parked his car in such a way as to impede traffic and to create a risk of a serious accident. Officer Yukihiro testified that although defendant moved his vehicle as Yukihiro's official unit came up behind it, he was directed to stop so that he might be warned of his violation and, perhaps, cited therefor.

[2]The People were not permitted to inquire whether or not defendant had had a bottle in his sock, with or without knowledge of its contents, or (2) whether he was familiar with the odor of PCP.

"In addition to that, there is the ugliest scar I have ever seen in my life, and the officer never saw it. Both sides of his leg have a scar.

"If the officer would have testified that he went up to warn him, or give him a ticket and smelled the odor of PCP and ordered him out of the car to check the source of the odor, he would have been held to answer. But he chose to give me this type of response, that he saw this man get out of his car and saw this bottle from the position he saw it. His credibility is just not there. The defendant's credibility is stronger.

"I am going to suppress People's 1 [the bottle containing the contraband]." (Italics added.)

At a second preliminary examination that was subsequently conducted before a different magistrate, Officer Yukihiro again testified to essentially the same facts. This time, however, he was asked to, and did, explain why he had had no occasion to notice or examine the skin condition of appellant's left leg. Defendant, thereafter, was held to answer. Perhaps this different result was due to the officer's more comprehensive testimony on this point, or perhaps because this second magistrate's experience was such as to lead him to believe that it is, indeed, more customary for a person exiting from the driver's side of a vehicle to expose *the left side,* rather than *the right side,* of his left leg to the view of someone positioned to the rear.

In any event, the testimony of Officer Yukihiro *when credited* was unquestionably sufficient to establish both defendant's guilt and the propriety of the manner in which the proofs thereof had been harvested. The superior court properly so concluded when it denied defendant's Penal Code section 995 motion. Nonetheless, this court thereafter dismissed the action, entering the following explanation in its minutes:

"Defendant's motion for a dismissal is argued and granted; the Court makes the following findings:

" 'The Court finds that the effect of Section 871.5 in providing the procedure in which actions of the magistrate are to be appealed in terms of issues of law in conjunction with the policy with regards to judicial economy, the fact that the testimony in evidence received in the preliminary hearings in both instances with regards to this matter do not involve different evidence or different witnesses but that they are one and the same, that the defendant's motion to dismiss is well taken.

" 'And the Court is going to dismiss the information on the grounds that, one, the people are foreclosed from refiling the action if the dismissal of the original

action was based on the *factual determination* by the magistrate in the first instance, and also on the basis of the only avenue of appeal being section 871.5, as set forth by the legislature.

" 'The Court perceives the policy adopted by the legislature, that if the magistrate at the original preliminary hearing made a *factual determination* as a basis for a dismissal, *that that is the end of the case.* If there was an error by the magistrate on issues of law, the people are required to proceed by the appellate procedures provided in Penal Code Section 871.5.'

"Case is dismissed and defendant's OR status is discharged." (Italics added.)

As has been pointed out in a number of decisions (see *Ramos* v. *Superior Court* (1982) 32 Cal.3d 26, 30 [184 Cal.Rptr. 622, 648 P.2d 589]; *People* v. *Salzman* (1982) 131 Cal.App.3d 676, 682, fn. 2 [182 Cal.Rptr. 748]; *People* v. *Encerti* (1982) 130 Cal.App.3d 791, 797 [182 Cal.Rptr. 139]; *Vlick* v. *Superior Court* (1982) 128 Cal.App.3d 992, 997 [180 Cal.Rptr. 742], *Chism* v. *Superior Court* (1981) 123 Cal.App.3d 1053 [176 Cal.Rptr. 909]), Penal Code section 871.5 is but one of several sections that were either modified or enacted to overcome the holding of *People* v. *Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651]. These changes, inter alia, now give a magistrate the power to preclude further efforts by the prosecution to bring a felony charge before a court having subject matter jurisdiction over it, by *twice* refusing to hold an accused to answer before such court. (See Pen. Code, § 1387.) However, as "explained in *Chism, supra,* at page 1061: 'Conferring to magistrates the authority to dismiss required enactment of a statute authorizing the prosecution to seek immediate superior court review of such dismissals to have the complaint reinstated so that successive dismissals by magistrates will not bar refiling under concurrently amended Penal Code section 1387.' " (*People* v. *Encerti, supra,* 130 Cal.App.3d 791, 798.)

Of course, resort by the People to the appeal procedures of section 871.5 is not only permissive, rather than mandatory, it is available only when the magistrate's order is based upon an erroneous *legal ruling* as opposed *to a finding of fact.* (*Salzman, supra,* at p. 683; *Vlick, supra,* at p. 997.) This is necessarily so since, as stressed in *Chism, supra,* 123 Cal.App.3d at page 1061: " ' "The credibility of witnesses at the preliminary examination, of course, is a question of fact within the province of the committing magistrate to determine, and neither the superior court nor an appellate court may substitute its judgment as to such question for that of magistrate. [Citations.] The magistrate is not bound to believe even the uncontradicted testimony of a particular witness, . . ." ' (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 667 . . . .)" (See also *In re Torres* (1982) 128 Cal.App.3d 826, 829 [180 Cal.Rptr. 700].)

Therefore, "after a first dismissal by the magistrate, the district attorney *may either refile a new complaint,* file an information under section 739 charging the dismissed matter [citations], *or*—if he wishes to eliminate the effect of the first dismissal for section 1387 purposes—challenge the dismissal directly under section 871.5. [Citation.]" *(Ramos* v. *Superior Court, supra,* 32 Cal.3d 26, 35, fn. omitted; italics added.)[3]

Nonetheless, and despite the foregoing statutory and decisional pronouncements, defendant urges that the challenged dismissal order was correctly made. He asks that we hold the new "respect" accorded a magistrate's rulings preclude not only *"repeated"* refilings *(Ramos, supra,* 32 Cal.3d at p. 35) but even *one* such refiling whenever the quantum of evidence produced by the prosecution during its initial effort to place an accused in jeopardy fails to establish in the mind of a particular magistrate a belief in the credibility of a police officer's testimony.

Credibility, however, like beauty, exists largely in the eye of the beholder. Too, though today of greatly enlarged stature and significance, preliminary examinations are still but the modern equivalent of the grand jury, a body to whom the People were allowed entree as often as necessary to test the quality of their proofs. Such examinations still retain the title "preliminary," because they are not, at least as yet, intended to be the equivalents of those final and plenary trials that traditionally have transpired only after an accused stood before a court possessing the jurisdiction to convict him. These latter proceedings, wherein the defendant is in actual jeopardy, and each side has exercised its right to a jury if it so desires,[4] should occur only after there has been time for adequate preparation.

Preliminary examinations must be conducted within days of a suspect's arrest and, not infrequently, they are assigned to the People's less experienced personnel. As a result, in instances, such as the present, where it is the propriety of police conduct, rather than the guilt or innocence of an accused, that is contested, with saddening frequency such hearings become tests, not of the correctness of an officer's actions, but rather the capacity of a harried or inexperienced deputy district attorney to familiarize himself with the facts of a case sufficiently to pose those questions necessary to develop an accurate picture for the court's consideration.

One need not question the merits of the exclusionary rule generally, to conclude that society has little to gain by closing its judicial eyes to evidence its

---

[3]The second of these three listed options was, of course, not available in the present instance since, unlike the situation in *Ramos,* our defendant was not held to answer as to any charge.

[4]Although we are aware of footnote 13 in *People* v. *Sims* (1982) 32 Cal.3d 468, 483 [186 Cal.Rptr. 77, 651 P.2d 321], and that "coming events cast their shadows before," nonetheless for present purposes, and in the instant context, we will assume that whatever right the People may have to a jury trial is not an irrelevance.

peace officers have developed in impeccable fashion in the lawful fulfillment of their duties, solely because the *initial* performance of the People's attorney was less than perfect. This is particularly true since, in the usual case, the prosecution has no way of determining in advance which of the infinite factual bases for challenge may be asserted in that instance, e.g., here the officer's failure to notice a scar on defendant's leg.

Of course, the concept that the People should have at least *two* opportunities to obtain a magistrate's favorable ruling on the admissibility of evidence is not of recent origin. Penal Code section 1538.5, subdivision (j), always has so authorized and it explicitly continues so to do following the enactment of section 871.5.

"If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for the return of the property or suppression of the evidence at the preliminary hearing is granted, and if the defendant is not held to answer at the preliminary hearing, *the people may file a new complaint* or seek an indictment after the preliminary hearing, *and the ruling at the prior hearing shall not be binding in any subsequent proceeding. In the alternative,* the people may move to reinstate the complaint, or those parts of the complaint for which the defendant was not held to answer, pursuant to Section 871.5. . . ." (Pen. Code, § 1538.5, subd. (j), as amended by Stats. 1982, ch. 625, § 1; ch. 1505, § 6.) (Italics added.)

Furthermore, the thought that two judicial officers may permissibly reach different results, even on the same record, is not a startling one. Whenever a superior court judge reviews the transcript of a preliminary examination, he may deny a Penal Code section 995 challenge to a magistrate's 1538.5 ruling, but thereafter, and on the same record, grant a de novo suppression motion. (See generally *People* v. *Harrington* (1970) 2 Cal.3d 991, 996 [88 Cal.Rptr. 161, 471 P.2d 961].) It is only where a question of law, rather than the credibility of a witness is at issue, that juridical conclusions ought not to vary. Presumably it was to provide for instances of this latter type that Penal Code section 871.5 was enacted.

The order under review is reversed.

Roth, P. J., and Beach, J., concurred.