[No. B011733. Second Dist., Div. Two. Sept. 26, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH M. RIVERA, JR., Defendant and Appellant.

252

---

**COUNSEL**

Michael R. Totaro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Thomas L. Willhite, Jr., Susan C. Wylie and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GATES, J.—Defendant appeals from the judgment entered following a jury trial that resulted in his conviction upon numerous counts charging grand theft and the issuance of checks without sufficient funds. (Pen. Code, §§ 487 and 476a.) In certain of these offenses the victim's losses exceeded $25,000 and $100,000, respectively. (Pen. Code, § 12022.6, subds. (a) and (b).) He contends:

"I. The People failed to initiate action on five counts within the statutory period of limitations, thereby depriving appellant of his fundamental right to diligent prosecution. [II]. The four grand theft counts involving Alessi must be dismissed for lack of evidence and failure to follow the proper procedure. [III]. Since the prosecution failed to resort to interstate process to obtain the presence at trial of a key witness, due diligence was not sufficiently established, and the trial court accordingly erred in permitting the witness's preliminary hearing testimony to be read at trial. [IV]. The trial court abused its discretion by allowing the prosecution to introduce evidence of appellant's debts, both personal and business, which were unconnected with the charges and whose probative value were significantly outweighed by their prejudicial effect."

Since appellant, quite properly, does not challenge the sufficiency of the voluminous and complex evidence to support his convictions, we need not detail it here. In sum it established that appellant issued many, many checks upon overdrawn or grossly inadequate accounts as payment for his purchases of gold and jewelry items which he then sold. His defense that these transactions were but innocent, albeit unwise, attempts to salvage a failing business was rejected by the triers of fact whose resolution of such a claim is, of course, binding upon appellate review.

All the subject offenses occurred between September 24, 1979, and January 15, 1980. A complaint was filed and an arrest warrant issued on July 15, 1982, charging appellant with 18 specific instances of grand theft and check fraud. Although he was promptly arrested, his preliminary examination was not conducted until April of 1983.[1] At that time he was bound

---

[1]This delay apparently was due to several extended continuances granted to permit defense counsel to obtain and examine appellant's tangled business records. These extensions seem to have been quite appropriate, but in any event their propriety, or lack thereof, would not alter our holding here.

over to the superior court on 14 of these charges, the magistrate finding as a point of law that an inadequate showing had been made as to four others. Nonetheless, the information subsequently filed by the People realleged the four dismissed counts, i.e., counts I, II, III, and IV, and added five others, i.e., counts VII, XIV, XX, XXI, and XXII.

Appellant's initial contention regarding the added counts is well taken. Prior to the amendment of Penal Code section 800, and the addition of section 802.5 in 1982,[2] these charges would have been barred by the prior limiting statute since no indictment had been found, information filed, or case certified to the superior court within the permissible three-year limiting period. However, in response to our Supreme Court's determination that indictments must be followed by preliminary hearings whenever requested, the Legislature in 1982 amended section 800 and enacted a new section, 802.5, which provided: "The time limitations provided in this chapter for the commencement of a criminal action shall be tolled upon the issuance of an arrest warrant or the finding of an indictment, and no time during which a criminal action is pending is a part of any limitation of the time for recommencing that criminal action in the event of a prior dismissal of that action, subject to the provisions of Section 1387."

■ Appellant acknowledges that these modifications permitted his prosecution and conviction on the 18 counts set forth in the complaint to which the 1982 warrant for his arrest was directed. He urges, however, as he did below, that Penal Code section 1009 did not authorize the belated addition of additional counts, even though evidence regarding them had been presented at his preliminary examination, an examination which was itself conducted after the three-year statutory period had expired. We agree.

We believe it clear that the "it" in former section 800's provision that "An indictment for *any felony,* . . . shall be found, or an arrest warrant issued by the municipal . . . court within three years after *its* commission" (italics added) can only have had reference to the felony, or felonies, set forth in the accusatory pleading, whether that document was a formal indictment or a simple complaint. That is to say, an arrest warrant is merely the instrumentality which authorizes taking the accused into custody in order that he may be required to respond to the accusations made against him in the pleading. As a consequence, the issuance of a warrant based upon either a complaint or an indictment charging one offense, cannot rationally serve to toll the running of the statutory period for another.

---

[2]Although not significant here these sections were again recast in 1984 into present sections 800-806.

In this particular instance, however, appellant was not prejudiced by this error since all the additional charges related to matters mentioned in the police report that supported the issuance of the instant complaint and warrant. In fact, in some instances these charges were no more than quasi-alternative "causes of action," i.e., grand theft counts arising from formerly alleged check charges and vice versa. Furthermore, even if they had not been formally added, proof of each of these matters would have been permissible in support of the original charges. Lastly, it must be noted that in truth only one of the twenty-three counts of which appellant was convicted has any pragmatic significance inasmuch as the two- or three-year sentences fixed for twenty-two of the counts have been ordered to run concurrently with the four-year term imposed on count III.

Turning to appellant's second contention, we find it unmeritorious. The magistrate expressly stated that his decision not to bind appellant over on the counts arising from appellant's issuance of four insufficient fund checks to Dominico Alessi stemmed from his earlier rejection of the People's attempt to present Alessi's affidavit in lieu of testimony. This ruling had been based on the defense counsel's claim that his efforts to secure the attendance of this witness had proven unsuccessful (see Pen. Code, § 872). The magistrate declared it to be his belief that, as a matter of law, these offenses could not be established without such testimony.[3] Since this was a legal ruling, as opposed to a finding of fact, under Penal Code section 739 the People properly proceeded to file an information recharging those offenses. Resort to the methodology recently authorized by Penal Code section 871.5 was not required. (*Ramos* v. *Superior Court* (1982) 32 Cal.3d 26, 35 [184 Cal.Rptr. 622, 648 P.2d 589]; *People* v. *Luna* (1983) 140 Cal.App.3d 788, 792-793 [189 Cal.Rptr. 792].)

Appellant's final two contentions also fail. ▮ The trial court heard extensive testimony concerning the People's efforts to produce Ronald Surat as a witness at appellant's trial. It was clear therefrom that Surat was being evasive. No point would have been served in resorting to interstate or international process since this witness's location here, or elsewhere, was unknown. We cannot hold that the trial court's factual finding that the prosecution had made a "good-faith effort" to secure Surat's presence constituted an abuse of discretion or was erroneous as a matter of law. (*Barber* v. *Page* (1968) 390 U.S. 719, 724-725 [20 L.Ed.2d 255, 259-260, 88 S.Ct. 1318]; *Ohio* v. *Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531]; *People* v. *Jackson* (1980) 28 Cal.3d 264, 312 [168 Cal.Rptr.

---

[3]When the prosecution had urged that it was permissible to infer from appellant's conduct throughout the period in question that these four insufficient fund checks had been issued with the same fraudulent intent as all the others, the magistrate had replied: "I never heard of a case that supports your position."

603, 618 P.2d 149]; *People* v. *Enriquez* (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73].)

■ Evidence regarding the desperately indebted condition of one charged with issuing insufficient fund checks with intent to defraud is clearly material. The following ruling by the trial court demonstrates its awareness of this fact and the limitation it placed upon the People's proof provided appellant with adequate protection: "[A] large debt or obligation figure is highly probative. The probative value outweighs any prejudicial effect, and there is to be no further questioning in regard to the nature of the debt or how it was incurred nor should there be any inference that somehow there is fraudulent behaviour [o]curring with a large operation business obligations of a large nature. [¶] . . . The questioning is limited to the amount of the sum and not any details as to how they were incurred."

The judgment is modified by striking counts VII, XIV, XX, XXI, and XXII, and is otherwise affirmed.

Roth, P. J., and Compton, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 14, 1987.