[Crim. No. 11429. Third Dist. Apr. 21, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
ORIN MARK SALZMAN, Defendant and Respondent.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Appellant.

Nathan L. Kaufman, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

SPARKS, J.—The pivotal question presented is whether Penal Code section 871.5 gives the superior court jurisdiction to review an order of a magistrate dismissing a felony complaint following the granting of a Penal Code section 1538.5 motion to suppress evidence. We hold that it does.

The procedural chronology giving rise to this issue is as follows:

On January 6, 1981, a preliminary hearing was commenced before Judge Bigler in the Siskiyou County Justice Court on a complaint charging defendant with cultivation of marijuana (Health & Saf. Code, § 11358). The next day that magistrate dismissed the action and discharged defendant after granting a defense motion to suppress all the evidence pursuant to Penal Code section 1538.5, subdivision (f).

Three days later, the district attorney filed a new felony complaint charging the same offense as the prior complaint. Preliminary examination on this complaint commenced March 17, 1981, this time before Judge Howard E. Jones. By stipulation it was agreed that the transcript of the first preliminary hearing would be submitted as the evidence at the second hearing, supplemented with argument by counsel. On March 30, 1981, Judge Jones also granted defendant's motion to suppress, and dismissed the action.

On April 2, 1981, the People moved in Siskiyou County Superior Court to reinstate the complaint, relying on the procedure provided in Penal Code section 871.5. The motion was submitted to Judge Kleaver on the basis of the preliminary hearing transcript and points and authorities. On April 22, 1981, Judge Kleaver denied the People's motion. He ruled:

"Assuming, without deciding, that the Penal Code § 871.5 procedure is properly available to the prosecution in this case, this court cannot say the magistrate erred as a matter of law. The concept of one's expectation of privacy, as it relates to the right to seize contraband, is a factual determination. The issue is not determinable as a matter of law merely because there was no contradictory evidence. Basically, the prosecution is faced with the requirement of showing that there is no substantial evidence to support the conclusion of the magistrate and,

due to ·the lack of such substantial evidence, that the magistrate erred as a matter of law. See *Witkin, California Procedure*, 2nd Ed., at page 4200.″

On April 29, 1981, the People appealed under the authority of section 1238, subdivision (a)(9), from the April 22d order denying their motion to compel the magistrate to reinstate the complaint. The People contend on appeal that the magistrate's order granting the motion to suppress was erroneous as a matter of law and that they are entitled to have the complaint reinstated. Defendant contends that the People are not entitled to appeal. Assuming an appeal lies, he further contends the magistrate's rejection of the warrantless search was a factual determination not reviewable under Penal Code section 871.5 and, in any event, was supported by substantial evidence. We agree with the last contention and consequently affirm.

### Testimony and Findings

The testimony adduced at the first preliminary hearing may be summarized as follows: In the morning of September 17, 1980, three miners reported to the Siskiyou County Sheriff's office that they had been beaten up and shot at earlier that day. The unknown assailants, the victims recounted, accused them of ripping· up and stealing their marijuana plants. The victims claimed that some 12 to 15 people had joined in the assault. The scene of the reported assault was a vehicular bridge across Seiad Creek in a rural area of the county.

Several deputies were dispatched to the scene to assist in the search for the suspects. A California Highway Patrol helicopter also embarked on aerial overflights to detect the location of the suspects. In the course of that surveillance numerous patches of marijuana plants were discovered. One such patch was seen near defendant's residence.

Deputy Robert Cooke was assigned to both the search for any additional armed subjects still at large in the assault incident as well as the seizure of various plots of marijuana growing in the area.

At the direction of his superior, Deputy Cooke proceeded up the road from the Seiad Bridge; a house, which was later determined to be defendant's, was located about 200-300 yards up the road. He had earlier received information that a vehicle, with several persons in it, had proceeded to defendant's residence; Deputy Cooke consequently proceeded

to the residence to find out if the individuals in the car were involved in the earlier assault and to secure the marijuana. He walked up the road leading to the residence and just before reaching it, observed a "No Trespassing" sign off to one side of the road.

When Deputy Cooke arrived at the location of the residence, he observed that there was no gate across the driveway. The general area consisted of a cabin, outbuildings, and a tent. Right off the driveway, the officer could see two garden spots; as he approached these areas more closely on his way to the front door of the residence, the officer could see that plants had been freshly pulled up from these two locations. After determining that the house contained no occupants and that the front door was locked, Deputy Cooke started over to another nearby building on the property, which turned out to be a pumphouse, in order to see if anyone was over there. There the officer observed freshly pulled marijuana plants. From this location the officer could also see a cultivated area, with indications that plants had been recently pulled out, near a tent. Behind that tent the officer again discovered freshly pulled marijuana plants. The officer, who still had been unable to locate anyone in the vicinity, returned to the area of the residence, and waited for backup units to arrive.

About an hour later, defendant drove up to the residence. As defendant approached Deputy Cooke he asked, "Am I under arrest?" Cooke responded by inquiring if he was the property owner. Defendant admitted that it was his property.

As Deputy Cooke's supervisor, Undersheriff Partlow, arrived, Deputy Cooke walked down the road to meet him. From a vantage point on the road, Cooke could see the top eight inches and distinctive green color of still another marijuana patch. With Sheriff Partlow's assistance, Cooke seized the additional plants.

Based on the transcript of this testimony, Judge Jones found that Deputy Cooke did not go to defendant's residence for the purpose of locating the assault suspects. Instead, the magistrate found he had been directed by a superior officer to secure the marijuana detected earlier. Judge Jones concluded that "as far as what [the deputy] saw by going up the pathway, going to the residence, he was in a place where he had no right to be. The court feels there was a reasonable expectation of privacy to that area, up around the residence, . . . around the outbuild-

ings and the residence." The magistrate then granted the motion to suppress under section 1538.5, found no other sufficient evidence and ordered defendant discharged.

## DISCUSSION

## I

Comprehensive statutory reform designed to enlarge a magistrate's power to dismiss became effective January 1, 1981. (Stats. 1980, ch. 938, pp. 2965-2968.) Included in the bill was the addition of Penal Code section 871.5, which provides in substance that the district attorney may seek review of a magistrate's order dismissing an action pursuant to sections 859b, 861, 871, or 1385 "on the ground that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof."[1] The reform bill also amended sections 1384, 1385, and 1387, which had formerly authorized dismissals in certain situations by the "court," to authorize explicity such dismissals by a "judge or magistrate." (Stats. 1980, ch. 938, §§ 6-8, pp. 2965-2968.) Finally, section 871, which formerly authorized the magistrate to "discharge" a defendant after hearing proofs which are insufficient, was amended to authorize both the discharge of the defendant and the dismissal of the complaint.[2]

---

[1]Penal Code section 871.5, as originally enacted, provided in pertinent part: "If an action, or a portion thereof, is dismissed by a magistrate pursuant to Sections 859b, 861, 871 or 1385, the prosecutor may make a motion, with notice to the defendant and magistrate, in the superior court within 10 days after the dismissal to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate, on the ground that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof. [¶] The superior court shall hear and determine the motion on the basis of the record of the proceedings before the magistrate. If the motion is litigated to decision by the people, they shall be prohibited from refiling the action, or the portion thereof, which was dismissed.... [¶] Pursuant to paragraph (9) of subdivision (a) of Section 1238 the people may take an appeal from the denial of the motion by the superior court to reinstate the complaint or a portion thereof. If the motion to reinstate the complaint is granted, the defendant may seek review thereof only pursuant to Sections 995 and 999a. Such review may only be sought in the event the defendant is held to answer pursuant to Section 871."

All further statutory references are to the Penal Code.

[2]The amendments were intended to clear up the procedural problems which followed in the wake of the Supreme Court's decision in *People* v. *Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651]. In *Peters*, the Supreme Court held that two dismissals of a felony complaint by a magistrate did not bar further prosecution. Peters had obtained dismissals in two separate preliminary examinations relating to the same al-

■ Defendant contends that section 871.5 is not available in cases where, as here, the dismissal at preliminary hearing is precipitated by the grant of a motion to suppress pursuant to Penal Code section 1538.5. He argues that section 1538.5 was "intended to be an all-encompassing statute" and that since section 1538.5 makes no provisions for the People to appeal the grant of a motion to suppress by a magistrate in a felony case where a defendant is not held to answer, this case must be dismissed.

An identical contention was urged and rejected in *Vlick v. Superior Court* (1982) 128 Cal.App.3d 992 [180 Cal.Rptr. 742]. In an opinion with which we agree, the Court of Appeal for the Second District held that "...section 871.5 was intended by the Legislature to be used by the People for a superior court review of an erroneous dismissal by a magistrate arising out of the magistrate's ruling as a matter of law on any motion," including a suppression motion under section 1538.5. (*Id.*, at p. 998.) We also conclude, therefore, that the People were entitled to a superior court review of the magistrate's dismissal order and to appeal that court's denial of the prosecutor's motion to reinstate the complaint.

II

■ The superior court incorrectly ruled that "[t]he concept of one's expectation of privacy ... is a factual determination. The issue is not determinable as a matter of law...." Defendant adopts that reasoning and argues that since the review under section 871.5 is limited to situations where the dismissal was erroneous "as a matter of law," it cannot be used to review factual determinations made by the magistrate. The argument misses the mark.

---

leged criminal transaction when the prosecutor in both instances had refused to comply with the magistrate's order to reveal the identity of a material witness. When the prosecutor then successfully obtained an indictment from a grand jury, Peters moved for dismissal of the indictment on the ground that further prosecution was barred by section 1387. Section 1387 then provided that a dismissal pursuant to that chapter of the Penal Code (pt. 2, tit. 10, ch. 8 (§§ 1381-1388)) barred further prosecution if the offense were a felony and the action had been previously dismissed pursuant to that chapter. The majority in *Peters* held that further prosecution was not barred because section 1385, the only section in that chapter which could have authorized the magistrate's dismissals, authorized dismissals in furtherance of justice by a "court," and a magistrate was not a court within the meaning of section 1385. *Peters* was subsequently overruled in *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].

■■■■■

"In *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. In the first step the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' [¶] No less important, however, is the second step of the process. As we observed in *Lawler*, 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' (*Ibid.*) Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, we explained, in such review it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' (*Ibid.*) On that issue, in short, the appellate court exercises its independent judgment." (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]; fn. omitted.)

These rules of appellate review also apply to motions to reinstate a complaint under section 871.5. Hence, the power to judge the credibility of witnesses, to resolve conflicts, to weigh the evidence, and to draw factual inferences was vested in the magistrate hearing the motion to suppress at the preliminary examination. On review under section 871.5, the superior court is bound by the magistrate's findings if they are supported by substantial evidence. But it is the duty of the superior court, and ours as well, to measure those facts, as found by the magistrate, against the constitutional standard of reasonableness. The constitutional issue is solely a question of law and if the magistrate mistakenly concluded that a search was unconstitutional that conclusion is also erroneous "as a matter of law."

## III

██ We hold that the magistrate's conclusion that Deputy Cooke committed an illegal search by intruding upon defendant's privacy was not erroneous as a matter of law. ██ We begin our analysis by reciting the familiar premise that "[w]arrantless searches are presumed unreasonable, therefore illegal, under the Fourth Amendment, subject to only a few carefully guarded exceptions. (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298, 98 S.Ct. 2408]; *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417]; *People* v. *Dalton* (1979) 24 Cal.3d 850, 855 [157 Cal.Rptr. 497, 598 P.2d 467].) The prosecution has the burden of showing a warrantless search falls within one of those exceptions. (*McDonald* v. *United States* (1948) 335 U.S. 451, 456 [93 L.Ed. 153, 158, 69 S.Ct. 191]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [194 P.2d 23].)" (*People* v. *Frank*█ (Cal.App.).) ██ As we have noted, we are bound by the magistrate's factual determination that the sole reason for the officer's intrusion upon defendant's property was to seize the marijuana discovered during the overflights. That intrusion consequently cannot be justified by the doctrine of exigent circumstances. Here, as in *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33], ". . . it is undisputed that the officers had not obtained a warrant, that conditions warranting the application of an exception to the warrant requirement did not exist, and that the officers did not make their observations from a position to which they were expressly invited; hence, unless they were *implicitly* invited to the place from which they made their observations, the officers' conduct cannot be upheld." (Italics in original; fn. omitted.)

Hence the magistrate's granting of defendant's motion to suppress can be reversed only if, as a matter of law, an implicit invitation offered by the observable characteristics of the property, gave the officer the right to position himself around the residence. The magistrate, however, expressly found that the officer "was in a place where he had no right to be." Since there was a no trespassing sign on defendant's property, that finding was supported by substantial evidence. (*Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421 [158 Cal.Rptr. 86].) When, as here, ". . . observations are made from a position to which the officer

has not been expressly or implicitly invited, the intrusion is unlawful
. . . ." (*Lorenzana* v. *Superior Court, supra*, 9 Cal.3d at p. 634.)

The order denying the People's motion to reinstate the complaint under section 871.5 is affirmed.

Blease, Acting P. J., and Carr, J., concurred.