[No. B004635. Second Dist., Div. Six. Feb. 6, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS GRAY, Defendant and Appellant.

**COUNSEL**

Scott & Wiles for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Susanne C. Wylie and Lisa B. Lench, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Douglas Gray appeals his conviction of possession of marijuana. (Health & Saf. Code, § 11357, subd. (c).) He contends the trial court erred by denying his motion to suppress evidence of marijuana. We remand for further proceedings.

### FACTS

Santa Barbara County sheriffs had received permission to search a swampy area known as the "bog" on Price Ranch for marijuana. One gets to the bog by turning off Price Ranch Road and entering through a gate to another road that leads to the bog. If one were to miss the turnoff and continue for a mile on Price Ranch Road, he would reach what is called the "loop." The loop is a private road which provides access to approximately seven houses.

On the day of the search, Detective Reinstadler asked Deputy Ortega to assist officers in removing marijuana from the Price Ranch. Deputy Ortega did not have specific instructions on how to get to the bog, but he had been to the Price Ranch before. He testified that on the way to the ranch he attempted to establish radio contact with Detective Reinstadler, but the reception was poor, and he did not recall what was said.

Deputy Ortega followed Price Ranch Road but missed the turnoff and arrived at the loop which took him in a circle so that he wound up where he started from. He decided to take the loop a second time because he had seen people the first time around, and felt they could give him directions. As he made the second loop, he turned into a horseshoe driveway and saw Gray approximately eight to ten feet away from his vehicle, carrying an open plastic trash bag filled with marijuana which protruded from the top of the bag. Gray ran and dropped the bag. Deputy Ortega arrested Gray and seized the bag of marijuana including another bag of marijuana he found in the same area where the first bag was dropped. In addition to the bag of marijuana, two plastic buckets of marijuana were seized, but no evidence was presented concerning their seizure.

Gray testified that the loop of the Price Ranch Road is private and that he had lived there for approximately three years. He further testified that, although there were no gates or signs on his property indicating that it was private, as one came across the bridge onto his property "[t]here are signs along fences all the way up the road saying 'No Trespass.'" Gray did not believe police officers would come onto his driveway without an arrest warrant or search warrant.

Gray was originally charged with possession of marijuana for sale, a violation of Health and Safety Code section 11359. After his motion to suppress under Penal Code section 1538.5 was denied, he entered a plea of guilty to possession of marijuana, a misdemeanor. (Health and Saf. Code, § 11357, subd. (c).)

DISCUSSION

I

We must determine whether Gray had a reasonable expectation of privacy at the location of his arrest, and whether Officer Ortega's conduct was reasonable. Those cases Gray relies on fail to support his contention that the seizure by Officer Ortega was illegal.

In *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33] the court held that a police officer peering into a two-inch gap between a drawn window shade and the sill of a window where he observed marijuana, constituted an illegal search.

In *Phelan* v. *Superior Court* (1979) 90 Cal.App.3d 1005, 1011 [153 Cal.Rptr. 738] police officers wanted to engage in surreptitious surveillance of defendants' property from the property next door. They inadvertently trespassed onto defendants' property where they observed partially concealed plants protruding from an enclosed garden. The manner in which the marijuana garden was enclosed indicated defendants had made a reasonable effort to secure their privacy, and the search was held unlawful.

In *People* v. *Salzman* (1982) 131 Cal.App.3d 676 [182 Cal.Rptr. 748] a police officer went to the residence of defendant in a rural area for the purpose of seizing marijuana that had been discovered as the result of helicopter overflights. Alongside the road leading to the residence was a sign that stated "No Trespassing." The officer walked around the property and discovered marijuana. The magistrate found that the deputy did not go to the property for the alleged purpose of finding assault suspects as the officer testified, but rather for the sole purpose of seizing marijuana. The trial court's findings, which were based on substantial evidence, were upheld and the search and seizure were held to be unlawful.

The facts in the instant case are significantly distinguishable. Gray did not have the same reasonable expectation of privacy that his counterparts had in *Lorenzana, Phelan* and *Salzman.* The driveway where he was seen was an open area that led directly onto a paved road. Although the roadway was not open to the public, it was used by residents living there, and presumably

by their guests, or other invitees such as tradespeople. Gray could have as easily been exposed to one of those persons as he was to Officer Ortega.

When Officer Ortega saw Gray, Gray was not in an enclosed room with the window shade drawn as in *Lorenzana*; his contraband was not in an enclosed garden as in *Phelan*, nor in the immediate vicinity of his house off a roadway as in *Salzman*. Rather, Gray was in open view in an area where his expectation of privacy was minimal at best.

Officer Ortega's purpose for being in the area was reasonable, and unlike the officers in *Lorenzana, Phelan,* or *Salzman,* he was not searching for contraband in areas where the desire for privacy was obvious. Ironically, the road Officer Ortega took on the loop was open and accessible, and was used by the residents in the area, whereas the road he was supposed to take was blocked by a gate. Ortega's intrusion onto Gray's property consisted of merely turning his car around in a driveway, an act that could have occurred by any one of the residents or their guests who regularly use the roadway. Gray was walking in plain view in a location where he could be seen from the roadway as well as from his own driveway.[1]

█ " '[T]he standard for determining what is an illegal search is whether defendant's "*reasonable expectation of privacy* was violated by unreasonable governmental intrusion." ' " (*People* v. *Superior Court (Spielman)* (1980) 102 Cal.App.3d 342, 346 [162 Cal.Rptr. 295] citing *People* v. *Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232] (overruled on other grounds in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4 [150 Cal.Rptr. 910, 587 P.2d 706].) █ Because of the reasonable conduct of the officer, and the unreasonable expectation of privacy on the part of Gray, the officer's seizure of the marijuana was proper.

## II

In addition to the two large garbage bags of marijuana Deputy Ortega seized from Gray, he also seized two white plastic buckets of marijuana. Like two white rabbits they apparently appeared from out of nowhere. The record only reveals that the buckets were confiscated after Gray's arrest. The trial judge said he would be glad to hear any evidence about the white buckets, but the People chose to "sit" on the state of the record.

Through a bit of verbal legerdemain the People attempt to justify the seizure of the buckets by asking us to draw an inference that the buckets

---

[1]Gray testified that when he first saw Deputy Ortega, the deputy was on the paved loop 75 to 100 feet away.

were taken from an open area in plain view following Gray's arrest. While Officer Ortega's trespass was inadvertent and reasonable, we, on the other hand, would be deliberately trespassing in a forbidden zone were we to speculate about the enigmatic origin of the white buckets. ■ Since no evidence was presented to justify their seizure, they must be suppressed.

■ The People argue that the error, if any, in admitting the white buckets is harmless, because the plastic bags of marijuana are admissible. Not so, says the Supreme Court in *People* v. *Miller* (1983) 33 Cal.3d 545 [189 Cal.Rptr. 519, 658 P.2d 1320]. The harmless error doctrine has no place in an appeal pursuant to Penal Code section 1538.5, subdivision (m) which authorizes a defendant who pleads guilty to seek appellate review of the denial of his motion to suppress evidence.

Our Supreme Court in *Miller,* referring to its decision in *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1][2] stated that an appellate tribunal must tread lightly when interfering with an accused's decision to plead guilty. An appellate court is not able to evaluate "the impact of a trial court's error on a defendant's decision to plead guilty." (*People* v. *Miller, supra,* 33 Cal.3d 545, 551.)

" '[A]fter the exclusion of certain items of evidence, the prosecution's case may continue to appear invulnerable to an appellate court . . . . [Yet], the defendant may have or believe he has means of impeaching, discrediting or casting doubt on such evidence, and the items excluded on appeal might be the very ones which posed the most difficult strategic problems for the defendant. Only the accused and his counsel are aware of what favorable evidence is available to them.' . . . [¶] '[A]n unacceptable degree of appellate speculation would necessarily inject itself into the application of the harmless error concept in such a context.' " (*People* v. *Miller, supra,* 33 Cal.3d 545, 551, 552, citing *People* v. *Hill, supra,* 12 Cal.3d 731, at p. 768.)

As in *Miller,* the record does not indicate what factors induced Gray to plead guilty. We do not know what defenses, if any, other than his suppression motion, he was capable of producing. Since the motion to suppress should have been granted with respect to the white buckets of marijuana, Gray may withdraw his plea if he so chooses. Whether our holding is nothing more than a Pyrrhic victory for Gray remains to be seen. Under *Miller* we may not engage in impermissible speculation to conclude that Gray would have agreed to plead guilty absent the trial court's erroneous ruling.

---

[2]Overruled on other grounds in *People* v. *Vaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].

Therefore, the judgment is reversed and the cause remanded to the superior court which is directed to vacate Gray's plea of guilty if he makes a motion to vacate his plea within 30 days after this opinion becomes final. If he does, the court shall reinstate the original charges contained in the information if the People so move, and proceed to trial.

If Gray fails to file his motion, the trial court is directed to reinstate the original judgment.

Stone, P. J., and Abbe, J., concurred.