[No. A043249. First Dist., Div. One. May 18, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
CRUZ ROSALES, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Mark S. Howell and Stan Helfman, Deputy Attorneys General, for Plaintiff and Appellant.

Steve Emery Teich for Defendant and Respondent.

**OPINION**

**RACANELLI, P. J.**—In this People's appeal, we examine the question whether the act of a police officer in seizing defendant's wrist and removing his hand from his pants pocket was lawful.

FACTS

The facts are uncontroverted:

On the afternoon of October 14, 1987, San Francisco Police Officer Peter Siragusa received an anonymous telephone tip that Pedro Rosales and Jose Rosales were selling heroin out of apartment 3 at 2038 McAllister Street. The caller also said that Pedro Rosales formerly lived on Hyde Street.

Officer Siragusa checked the police computer and found a Pedro Rosales of Hyde Street to be subject to a "1035 search" (presumably, a probation or

parole search). Officer Siragusa and his partner went to the McAllister Street apartment and kept it under surveillance for about a half-hour. The officers observed two Mexican males inside the apartment who fit the caller's description of the men; one of them matched the computer-generated physical description of Pedro Rosales. Officer Siragusa believed the two men in the apartment to be Jose and Pedro Rosales. In fact, one of the men was defendant Cruz Rosales.

Officer Siragusa saw defendant leave the apartment and walk to a nearby corner, where he remained for about 15 or 20 minutes sitting against a car. The officer thought defendant seemed to be "waiting . . . or looking for somebody."

About 15 or 20 minutes later, defendant started walking back toward the apartment building. At this point, the two plainclothes officers approached defendant. Officer Siragusa displayed his star and identified himself as a police officer. Officer Siragusa then noticed a one and one-half inch bulge in defendant's left pants pocket.

Defendant put his left hand into that pocket as the officer approached. Officer Siragusa then grabbed defendant's upper left wrist and pulled his hand out of the pocket. As defendant's hand came out, a plastic bag or packet fell to the ground. The officer believed the visible, brown chunky substance to be heroin and immediately arrested defendant. A later analysis determined that the packet contained 25.2 grams of heroin estimated to have a street value of $3,000 to $5,000.

Officer Siragusa testified that as he approached defendant, he intended not to detain him but only to ask some questions pertaining to the reported narcotics activities of Pedro and Jose Rosales. He stated he seized defendant's hand because he feared defendant was reaching for a weapon in his pocket. Based on his experience in narcotics investigations, Officer Siragusa believed it was not uncommon for heroin dealers to carry weapons. The officer added he did not know whether the bulge he observed was a weapon.

The committing magistrate granted defendant's suppression motion reasoning that Officer Siragusa had no articulable reason to believe defendant had a weapon in his pocket so as to justify a pat search.

Following dismissal of the charge of possession of heroin for sale, the People moved in superior court pursuant to Penal Code section 871.5 to reinstate the complaint. After the issue had been briefed and considered, the court denied the motion. This appeal by the People ensued.

## DISCUSSION

We begin our discussion by emphasizing that the question before us is purely one of *law*. ■ In a proceeding under Penal Code section 871.5 to reinstate a complaint, the superior court sits as a reviewing court and is bound by the magistrate's findings of fact if they are supported by substantial evidence. (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 633 [200 Cal.Rptr. 448, 677 P.2d 854].) "But it is the duty of the superior court, and ours as well, to measure those facts, as found by the magistrate, against the constitutional standard of reasonableness. The constitutional issue is solely a question of law and if the magistrate mistakenly concluded that a search was unconstitutional that conclusion is also erroneous 'as a matter of law.' " (*People* v. *Salzman* (1982) 131 Cal.App.3d 676, 684 [182 Cal.Rptr. 748]; accord *People* v. *Tacy* (1987) 195 Cal.App.3d 1402, 1409 [241 Cal.Rptr. 400]; *People* v. *Fay* (1986) 184 Cal.App.3d 882, 889-890 [229 Cal.Rptr. 291].)

■ The People challenge the magistrate's conclusion that Officer Siragusa should have first conducted a patdown search *before* seizing defendant's wrist, which directly led to removal of the bulging contents from his pocket. Undoubtedly, the magistrate was relying on the general proposition that an investigatory detention alone will not justify seizure of a soft object. ■ A police officer is entitled to reach inside the suspect's clothing and remove objects therefrom only if the officer has reason to believe the object is usable as a weapon. (*People* v. *Collins* (1970) 1 Cal.3d 658, 662-663 [83 Cal.Rptr. 179, 463 P.2d 403]; *People* v. *Mosher* (1969) 1 Cal.3d 379, 393-394 [82 Cal.Rptr. 379, 461 P.2d 659]; see *People* v. *Fay, supra,* 184 Cal.App.3d at p. 891.)

But, as the Attorney General correctly argues, that general rule is subject to exceptions under emergency conditions. When the officer reasonably believes the suspect is reaching for a weapon, the officer need not *first* undertake a patdown search to palpate the object the suspect is reaching for. (*People* v. *Wigginton* (1973) 35 Cal.App.3d 732, 737-740 [111 Cal.Rptr. 26]; *People* v. *Superior Court (Holmes)* (1971) 15 Cal.App.3d 806, 813 [94 Cal.Rptr. 728]; *People* v. *Atmore* (1970) 13 Cal.App.3d 244, 247-248 [91 Cal.Rptr. 311]; *People* v. *Woods* (1970) 6 Cal.App.3d 832, 838 [86 Cal.Rptr. 264]; *People* v. *Sanchez* (1967) 256 Cal.App.2d 700, 703-704 [64 Cal.Rptr. 331].)

■ Defendant responds to the cited line of authority by underscoring that the cases relied upon involved circumstances where the officer had cause to detain *and* pat search. In contrast, he argues, Officer Siragusa had neither cause to detain nor, consequently, the right to pat search him.

Although we may accept defendant's argument that the officer lacked a reasonable basis to detain him, we think defendant's reasoning is seriously flawed in that no actual detention had occurred at the moment defendant reached into his pocket.

■  It is now well settled that a police officer may approach a citizen, identify himself as a police officer and ask questions even without any objective justification. "For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are what Justice White termed 'consensual encounters' (*id.* 460 U.S. at p. 507 [75 L.Ed.2d at p. 243, 103 S.Ct. at p. 1329]), which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' (*Id.* 460 U.S. at p. 497 [75 L.Ed.2d at p. 236, 103 S.Ct. at p. 1324].) Second, there are what are commonly termed 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' (*Ibid.*) Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, seizures which include formal arrests and restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime. (*Id.* 460 U.S. at p. 498 [75 L.Ed.2d at p. 237, 103 S.Ct. at p. 1325].)" (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325], cert. den. 466 U.S. 944 [80 L.Ed.2d 474, 104 S.Ct. 1929], quoting from *Florida* v. *Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319].)

■  Here, the interaction between Officer Siragusa and defendant began as a consensual encounter. Neither a physical detention nor an intention to detain is shown by the record. Officer Siragusa merely approached defendant and identified himself with the (aborted) intention to ask some investigatory questions.

The encounter was escalated by defendant's conduct which created an appearance of potential danger to the officer. When defendant suddenly put his hand into the bulging pocket, Officer Siragusa reasonably believed he was, or could be, reaching for a weapon. Certainly, *at that point,* the officer acquired sufficient grounds to justify a temporary detention to check for weapons. (*People* v. *Lee* (1987) 194 Cal.App.3d 975, 982-983 [240 Cal.Rptr. 32].)

We reiterate that our task is limited to measuring the facts as found by the magistrate against constitutional standards. (*People* v. *Salzman, supra,* 131 Cal.App.3d at p. 684.) Defendant asserts that the magistrate disbelieved the officer's testimony. But we find nothing in the record, directly or indirectly, to support that assertion. As we review the record, the magistrate simply concluded as a matter of law that the officer had no articulable basis to believe defendant had a weapon because the officer had not yet undertaken a pat search to determine whether the bulge could possibly be an assault weapon. We think that *legal* conclusion was erroneous.

Moreover, even without a detention, we believe the officer was entitled to take appropriate precautionary measures to ensure his own safety. Grabbing and extricating defendant's hand in a single defensive maneuver was, under the circumstances shown, a measured and justifiable response to defendant's potentially threatening conduct. The officer was not required to draw his own weapon in defense; nor was he obliged to first conduct a patdown search in order to determine whether the bulge felt like a weapon. We think the officer's spontaneous act of grabbing defendant's wrist, motivated by reasons of caution, was eminently reasonable.

The order denying the motion to reinstate the complaint is reversed.

Holmdahl, J., and Stein, J., concurred.

A petition for a rehearing was denied June 8, 1989, and respondent's petition for review by the Supreme Court was denied July 27, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.