Filed 3/21/16  In re F.A. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re F.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. F.A., Defendant and Appellant. | A144177 (Alameda County Super. Ct. No. SJ13020554) |

This is an appeal from judgment following the juvenile court's denial of the motion to suppress evidence filed pursuant to Welfare and Institutions Code section 700.1 by appellant F.A. (hereinafter, minor).  For reasons stated below, we remand this matter to the juvenile court for the purpose of calculating and awarding predisposition custody credits to minor, and in all other regards affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 17, 2014, a subsequent juvenile wardship petition was filed pursuant to Welfare and Institutions Code section 602, alleging that minor, already a ward of the court, was found in possession of a loaded firearm in a public place in violation of Penal Code section 25850, subdivision (a) (count one), and carried a concealed weapon without

1

a license in violation of Penal Code section 25400, subdivision (a)(2) (count two) (hereinafter, petition).[1]

On October 27, 2014, minor moved to suppress evidence (§ 700.1).  The juvenile court denied his motion after an evidentiary hearing on November 17, 2014.  The next day, a jurisdictional hearing was held, revealing the following evidence.

On October 16, 2014, at about 8:50 a.m., Officer Alan Reynaga of the Hayward Police Department received a call from dispatch regarding a report of suspicious activity on Dixon Street near the South Hayward BART station, which he knew to be a high crime area.  A female named "Maria" had called 911 to report having seen three males jump a fence near the BART station before hiding among parked cars, possibly to evade police.  According to the dispatch, "Maria," who left a phone number but no last name or address, was a resident of a nearby apartment complex located at 29009 Dixon Street.  She did not describe the males' ethnicities or ages, but stated that one was wearing a red T-shirt, and the others were wearing dark clothing.

Within minutes, Officer Reynaga, driving southbound on Dixon Street, saw a group of five males walking south on the east side of the street.  One of the males wore a red T-shirt, and the others wore dark clothing.  Officer Reynaga made a U-turn at the intersection of Dixon and Copperfield Streets, activated his emergency lights and siren, and "initiated an investigative stop."

Officer Reynaga instructed the five males, whom he believed to be between 13 and 17 years old, to "take a seat on the curb."  All complied except minor.  When the officer repeated the instruction, minor complied.  Officer Reynaga, who had been on duty looking for truants, understood that, pursuant to municipal law, juveniles were subject to a daytime curfew requiring school attendance during regular school hours.  A minor detained by police in violation of this ordinance would typically be transported to the minor's Hayward-area school or to the police station.

---

[1]     Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

Around this time, Officer Reynaga's colleagues, Officers Dean Valencia and Armando Diaz, arrived at the scene. Like Officer Reynaga, Officer Valencia had received information from dispatch that a female identified as "Maria" had reported possible suspicious activity in the vicinity of the South Hayward BART station – to wit, three males jumping a fence near the apartment complex at 29009 Dixon Street. Together, the officers began questioning the males, who remained seated at the curb.

Specifically, Officer Valencia asked the boys who they were and why they were not in school. After the boys gave "conflicting statements about where they were going, why they were in Hayward, what school they went to, whether school was in session . . . [and] where they lived," the officers decided to individually question them. Officer Valencia asked minor whether he was a student and where he lived; however, minor's answers were uncertain. Officer Valencia, deciding minor would need to be transported to the station for further investigation, asked him whether he had any contraband or weapons, to which minor responded that he had a cigarette lighter in his pocket. Believing minor's possession of the cigarette lighter to be illegal under the Penal Code, Officer Valencia instigated a pat search of minor's person, which revealed in his jacket pocket a scissor blade with a broken tip – to wit, an item commonly used to start the ignition in a stolen vehicle. Officer Valencia thus continued the pat search, ultimately feeling what he believed to be the handle of a handgun inside minor's jacket. As Officer Valencia restrained minor, Officer Diaz searched him, finding a fully loaded and cocked nine-millimeter or .40-caliber handgun in the upper left inside jacket pocket. Minor was thus arrested and transported to the police station.

At the conclusion of the jurisdictional hearing, the juvenile court sustained the findings that minor was in possession of a loaded firearm in a public place (count one), and carried a concealed weapon without a license (count two.) The juvenile court thus continued minor as a ward of the court and committed him to the custody of the probation department for out-of-home placement subject to various terms and conditions. This timely appeal followed.

**DISCUSSION**

Minor raises two contentions on appeal. First, minor contends the juvenile court violated the constitutional prohibition against unreasonable search and seizure when denying his motion to suppress evidence. Second, minor contends, and the People concede, the juvenile court erred by failing to calculate and award custody credits based upon his time already spent in custody in juvenile hall. We address each contention in turn below.

**I.      Fourth Amendment Challenge.**

Minor's primary challenge is to the denial of his motion to suppress evidence under the Fourth Amendment of the United States Constitution. Specifically, minor contends the arresting officers lacked reasonable suspicion to initially detain him and, thus, that their subsequent pat search of his person that revealed a loaded firearm was unlawful. As such, minor reasons, all evidence derived from the illegal search, including the firearm, should have been suppressed. The following legal principles apply.

"When reviewing the grant or denial of a motion to suppress, an appellate court must uphold the [lower] court's express or implied findings of fact if the facts are supported by substantial evidence." (*People v. Lim* (2000) 85 Cal.App.4th 1289, 1296.) We then employ our independent judgment to decide whether, under those facts, the search and seizure was legal. (*People v. Ruiz* (1990) 217 Cal.App.3d 574, 580; *People v. Ayala* (2000) 23 Cal.4th 225, 255.) Otherwise stated, the legality of a search or seizure is measured by "the facts, as found by the trier [of fact], against the constitutional standard of reasonableness. [Citations.] Thus, in determining whether the search or seizure was reasonable on the facts found by the [trier of fact], we exercise our independent judgment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)" (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.)

With respect to the substantive law, "state and federal claims relating to exclusion of evidence on grounds of unreasonable search and seizure are measured by the same standard. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 76 [32 Cal.Rptr. 2d 33, 876 P.2d 519]; *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) 'Our state

4

Constitution [Cal. Const., art. I, § 13] thus forbids the courts to order the exclusion of evidence at trial as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution [U.S. Const., 4th Amm.] as interpreted by the United States Supreme Court.' (*In re Tyrell J.*, *supra*, at p. 76.)" (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

Under binding United States Supreme Court authority, *Terry v. Ohio* (1968) 392 U.S. 1, 19, "the judicial inquiry into the reasonableness of a detention is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (*People v. Brown* (1998) 62 Cal.App.4th 493, 496.) Consistent with this rule and relevant to our case, an officer is justified in briefly detaining an individual if, at its inception, the officer had "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." (*California v. Hodari D*. (1991) 499 U.S. 621, 636, fn. 10; *People v. Hernandez* (2008) 45 Cal.4th 295, 299.) In other words, even where "there is no probable cause to make an arrest," an officer can initially detain an individual for purpose of an investigation if the officer reasonably suspects unlawful activity has or will occur. (*Terry v. Ohio, supra*, 392 U.S. at p. 22.)

Applying these principles to the facts at hand, we thus must determine whether, first, the arresting officers had reasonable suspicion to detain minor and his juvenile associates and, second, whether the subsequent pat search of minor's person was justified.[2] (*People v. White* (2003) 107 Cal.App.4th 636, 642.) Affording all presumptions in favor of the lower court's factual findings, as the law requires (*People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1244-1245), we conclude that the officers' conduct in this case was indeed constitutionally lawful.

---

[2] The People do not dispute the meeting between minor and police was a detention rather than a consensual encounter. (See *In re Manuel G.* (1997) 16 Cal.4th 805, 821 [unlike consensual encounters, detentions require an articulable suspicion that the person has committed or is about to commit a crime].)

## A. The Detention Was Lawful.

First, with respect to the officers' initial encounter with minor and his colleagues, it is "well settled that a police officer may approach a citizen, identify himself as a police officer and ask questions even without any objective justification." (*People v. Rosales* (1989) 211 Cal.App.3d 325, 330; see also *People v. Vibanco* (2007) 151 Cal.App.4th 1, 14.) "Detention, not questioning, is the evil at which *Terry's* second prong is aimed. [Citation.]" (*People v. Brown, supra*, 62 Cal.App.4th at p. 496.) "[A]n officer has every right to talk to anyone he encounters while regularly performing his duties . . . ." (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227.) Here, the officers did in fact have an objective justification for approaching minor to ask some questions – to wit, the tip received by the 911 operator from "Maria," a resident of an apartment complex near the South Hayward BART station, deemed by police to be a "high crime" area, that a group of males had jumped a nearby fence and was hiding behind parked vehicles, possibly to evade police. According to minor, this tip was vague and unreliable hearsay because the informant provided only her first name and phone number to the 911 operator, without identifying her exact location or whether she in fact had observed the males. We, however, disagree. Not only did Maria accurately describe the males' clothing (one in a red T-shirt and the others in dark clothing), she also accurately described the general location and time in which the males were detained by the officers (approximately 9:00 a.m. near South Hayward BART station). No more was required. (*People v. Brown* (2015) 61 Cal.4th 968, 981-983 ["An officer may arrest or detain a suspect 'based on information received through "official channels." ' [Citations.] If a 911 call 'has sufficient indicia of reliability . . . a dispatcher may alert other officers by radio, who may then rely on the report, [citation], even though they cannot vouch for it.' "]; see *id.* at p. 984 [in assessing the reasonableness of a detention, "[a] very recent report of a crime in progress, [the defendant's] close proximity to the crime scene, and the lack of other vehicle or pedestrian traffic in the residential alley, are all significant factors"]. Compare *In re Joseph G.* (1995) 32 Cal.App.4th 1735, 1741 [information from an unnamed mother of a student that her son had seen the appellant at a school event the previous week in

6

possession of a gun was sufficiently reliable to demonstrate reasonable suspicion justifying a search of the appellant's locker].)

Moreover, and in any event, the officers, who were present in the area to look for truants, were undoubtedly entitled to approach minor and his associates after observing them walking southbound on Dixon Street to ask for their identity and purpose for being there. As Officer Reynaga testified, the boys appeared between 13 and 17 years in age, and were clearly not in school despite the undisputed facts that they were of school age and were walking down the street on a school day during regular school hours. (Hayward Mun. Code, art. 9, § 4-9.05, subd. (a) ["It is unlawful for any minor, who is subject to compulsory education or to compulsory continuing education to loiter, idle, wander or be in a public place when said minor's assigned school is actually in session"].) As such, the officer's decision to detain the juveniles to question them about their age and why they were not in school was wholly reasonable. (*In re Justin K*. (2002) 98 Cal.App.4th 695, 699-700 [the law requires a reasonable suspicion, not proof beyond reasonable doubt, to warrant an investigatory stop].) As the United States Supreme Court has explained, even " 'innocent behavior will frequently provide the basis for a showing of probable cause,' and . . . '[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' That principle applies equally well to the reasonable suspicion inquiry." (See *United States v. Sokolow* (1989) 490 U.S. 1, 10.) The detention in this case, thus, did not run afoul of the Fourth Amendment.

### B.    The Pat Search Was Lawful.

The record then reflects that, after lawfully detaining minor and his colleagues for the purpose of investigating possible truancy or criminal activity, Officer Valencia asked him whether he was carrying any illegal items, and minor responded in the affirmative that he had a cigarette lighter in his pocket. The officer thus pat-searched minor and found, not only the lighter, but also a scissor blade with a broken tip, an item typically used to start a stolen vehicle. Then, upon further searching, the officer located the loaded

7

firearm in minor's jacket pocket. Minor insists this pat search was unlawful because it could not be justified by either the officers' purported truancy investigation or his "volunteered" statement that he had a lighter. We disagree.

First, as the People note, the officers were undoubtedly entitled to ask minor whether he was carrying contraband given the objective and particularized facts, identified above, that he may be involved in criminal activity. (See *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1370 ["[defendant] was certainly not seized within the meaning of the Fourth Amendment simply because [the officer] asked her the name of the driver and whether the car contained anything illegal. (See *Ohio v. Robinette* (1996) 519 U.S. 33 [117 S.Ct. 417, 136 L.Ed.2d 347, 148 A.L.R. Fed. 739 [officer need not advise suspect he or she is free to go before asking if vehicle contains contraband, and such a question does not create a Fourth Amendment seizure]; . . . *U.S. v. Ayon-Meza* (9th Cir. 1999) 177 F.3d 1130, 1133 [officer asking whether traveler at airport has drugs during consensual conversation does not implicate the Fourth Amendment].)"].)

Minor argues, nonetheless, that his acknowledgement of carrying a lighter could not have justified the officers' subsequent pat search because carrying a lighter is not illegal under California law.[3] However, even assuming for the sake of argument that minor's analysis of the Penal Code is correct, the United States Supreme Court has recently made clear that a police officer's reasonable mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold a seizure under the Fourth Amendment. (*Heien v. North Carolina* (2014) 135 S.Ct. 530, 534 [police officer acted reasonably, albeit mistakenly, when initiating a traffic stop against a driver for failing to have two operative brake lights where the law only required only one operative brake

---

3        Penal Code section 308, subdivision (b) provides in relevant part:  "Every person under the age of 18 years who purchases, receives, or possesses any tobacco, cigarette, or cigarette papers, or any other preparation of tobacco, *or any other instrument or paraphernalia that is designed for the smoking of tobacco*, products prepared from tobacco, or any controlled substance shall, upon conviction, be punished by a fine of seventy-five dollars ($75) or 30 hours of community service work."  (Italics added.) According to minor, a lighter, a multi-purpose device, is not necessarily an instrument designed to smoke tobacco.

light].)  Here, because Officer Valencia could have reasonably, even if mistakenly, believed minor was carrying contraband, the officer's subsequent pat search of his person, revealing possession of a loaded firearm in violation of Penal Code section 25850, subdivision (a), was wholly justified.

Accordingly, based on the given factual record, we conclude no violation of minor's Fourth Amendment rights has been established.  The juvenile court's denial of minor's suppression motion and subsequent findings that he committed the charged offenses, therefore, must stand.

## II.    Calculation and Award of Custody Credits.

Both parties agree the juvenile court erred in this case by neglecting to award minor any credits based upon the days he spent in confinement in juvenile hall prior to disposition under both the October 2014 and March 2013 petitions (which were aggregated by the trial court at the jurisdictional hearing).  We likewise agree.

"In a juvenile delinquency proceeding, 'a minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing. [Citations.] It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty. [Citations.]' [Citation.] '[W]hen a juvenile court elects to aggregate a minor's period of physical confinement on multiple petitions . . . , the court must also aggregate the predisposition custody credits attributable to those multiple petitions.' (*Ibid.*; see Welf. & Inst. Code, § 726, subd. (d) ['If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the "maximum term of imprisonment" shall be the aggregate term of imprisonment specified in [Penal Code section 1170.1, subdivision (a)] . . . .'].)"  (*In re A.M.* (2014) 225 Cal.App.4th 1075, 1085-1086.)

Here, there is no evidence in the record to suggest the juvenile court calculated minor's predisposition custody credits as required by governing statutory law. Accordingly, we remand the matter to the juvenile court to conduct a further hearing for

9

purposes of addressing the custody credit issue.  In all other regards, however, the juvenile court's judgment stands.

## DISPOSITION

The juvenile court's order sustaining the juvenile wardship petition is affirmed. The matter is remanded to the juvenile court for a further hearing for the purpose of awarding minor credit against his maximum term of confinement for the time spent in custody before disposition.

_____

Jenkins, J.

We concur:

_____

McGuiness, P. J.

_____

Pollak, J.

*In re F.A.*, A144177